

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) ) | |
| WESTPORT INSURANCE CORPORATION, | ) ) ) | 08CV5543 JUDGE DARRAH MAG. JUDGE COX |
| Defendant. | ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant, Westport Insurance Corporation ("Westport"), hereby provides Notice of Removal of a civil action from the Circuit Court of Cook County, Illinois, County Department, Chancery Division, to the United States District Court for the Northern District of Illinois, Eastern Division. The United States District Court for the Northern District of Illinois, Eastern Division, has jurisdiction over the matter pursuant to 28 U.S.C. § 1332, because complete diversity exists between Plaintiff, National Union Fire Insurance Company of Pittsburgh, PA ("Plaintiff"), a corporation organized and existing under the laws of the state of Pennsylvania with its principal place of business in the State of New York, and Defendant, Westport, a corporation organized and existing under the laws of the State of Missouri with its principal place of business in the State of Kansas, and the amount in controversy exceeds $75,000. The grounds in support of this Notice of Removal are as follows:

1.      On September 25, 2008, counsel for Westport received Plaintiff's Complaint in an action commenced in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, Cause No. 08 CH 35788. A copy of Plaintiff's Complaint is attached hereto as Exhibit

1 as required by 28 U.S.C. § 1446(a). Exhibit 1 constitutes the only pleading served on Westport to date in this action.

2.      This notice of removal is timely because it is being filed within 30 days after Westport's counsel's receipt of the summons and initial pleading setting forth the claims for relief upon which this action is based. Westport had no prior knowledge of the lawsuit.

3.      This cause is properly removable because, as noted above, complete diversity citizenship exists between Plaintiff and Westport, and the amount in controversy exceeds $75,000.

4.      Westport is informed and believes, and on that basis alleges, that Plaintiff, National Union Fire Insurance Company of Pittsburgh, PA, is and was, at the commencement of this action, a corporation organized and existing under the laws of the state of Pennsylvania with its principal place of business in the State of New York. (Complaint ¶ 2.)

5.      Defendant, Westport, is a corporation organized and existing under the laws of the State of Missouri with its principal place of business in the State of Kansas. (Complaint ¶ 3.)

6.      In the six-count Complaint, Plaintiff seeks, in part, a declaration that Plaintiff and Westport's agreement to arbitrate over the amount of $200,000 either is null and void and/or is rescinded. (Complaint ¶¶ 14, 17, and Requests for Relief for Counts I, II, III, IV and V.)

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1441(a), because this District embraces the place where the removed State Court Action has been pending.

8.      In view of the above facts, this is a civil action of which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1332 and is, therefore, one that may be removed to this Court by Westport, pursuant to the provisions of 28 U.S.C. § 1441.

9.     Defendant will file a copy of this Notice of Removal with the Clerk of the State Court in which the action is pending.

WHEREFORE Defendant, Westport Insurance Corporation, prays that the above action now pending against it in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, be removed to this Court.

Respectfully submitted,

WESTPORT INSURANCE CORPORATION

By:_____

One of the Attorneys for Defendant

Michael M. Marick
MECKLER BULGER TILSON MARICK & PEARSON LLP
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 474-7900

## CERTIFICATE OF SERVICE BY MAIL

The undersigned attorney certifies that he served a copy of this Notice of Removal on:

> William P. Pistorius
> Michelle R. Valencic
> CLAUSEN MILLER P.C.
> 10 South LaSalle St.
> Chicago, IL 60603

by U.S. mail, prepaid, and upon depositing the same in the U.S. mail at 123 North Wacker Drive,

Chicago, Illinois 60606 on September 29, 2008, with proper postage prepaid.

Michael M. Marick

M:\12462\pleading\Notice of Removal.doc

1

23-3222-00-9
Firm I.D. No. 90181

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

NATIONAL UNION FIRE INSURANCE )
COMPANY OF PITTSBURGH, PA )
                                        )
                    Plaintiff(s)        )
                                        )
        vs.                             )        No.    **08CH35788**
                                        )
WESTPORT INSURANCE                      )
CORPORATION                             )
                                        )
                    Defendant(s)        )

## COMPLAINT FOR DECLARATORY JUDGMENT AND FOR OTHER RELIEF

NOW COMES Plaintiff, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA ("NATIONAL UNION"), by and through its attorneys, CLAUSEN MILLER P.C., and for its Complaint for Declaratory Judgment and Other Relief against the Defendant, WESTPORT INSURANCE CORPORATION ("WESTPORT"), states as follows:

### NATURE OF ACTION

1.     Plaintiff, NATIONAL UNION, brings this action under 735 ILCS Section 5/2-701, *et seq.* and/or under the Illinois Uniform Arbitration Act, 710 ILCS 5/1 *et seq.* National Union seeks a declaration regarding the parties' rights and obligations, if any, under an arbitration agreement and, further, seeks to permanently enjoin any further arbitration proceedings between and among the parties, in light of the Defendant, WESTPORT's, material breach of the arbitration agreement.

1205508.1

## PARTIES

2.     NATIONAL UNION is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in New York, New York. NATIONAL UNION transacts business in the State of Illinois.

3.     Defendant WESTPORT is a corporation organized and existing under the laws of the State of Missouri, with its principal place of business in Overland Park, Kansas. WESTPORT transacts business in the State of Illinois.

## THE UNDERLYING COVERAGE DISPUTE

### A.     The National Union and Westport Policies

4.     National Union issued a Health Care Agency Professional Liability Policy, No. HHA-6915000(03), to Shay Health Care Services, Inc. and Shay Nursing, Inc. (collectively "Shay") for the policy period from November 2, 2002 through November 2, 2003 (the "National Union Policy"). A true and correct copy of the National Union Policy is attached hereto as Exhibit "A" and incorporated herein by reference. The National Union Policy included policy limits of $1 million each wrongful act, subject to a $3 million aggregate limit and a $1,000.00 deductible each wrongful act. Ex. A.

5.     Westport issued a Commercial Excess Liability and Umbrella Liability Policy, No. SBT003153, to Shay for the policy period from November 2, 2002 to November 2, 2003 (the "Westport Policy"). A true and correct copy of the Westport Policy is attached hereto as Exhibit "B" and incorporated herein by reference. The Westport Policy included limits of $3 million each occurrence. Ex. B.

2

**B.     The Underlying Smith Suit**

6.     On or about November 10, 2003, a suit styled <u>Korey Smith, et al. v. Alberta</u> <u>Payne and Shay Health Care Services, Inc., et al.</u>, Case No. 03-014237, was filed in the Circuit Court of Cook County, Illinois (the "<u>Smith</u> suit"). A true and correct copy of the Complaint filed in the <u>Smith</u> suit is attached hereto as Exhibit "C" and incorporated herein by reference.

7.     The <u>Smith</u> suit was brought by minor Plaintiff Korey Smith and his mother against Alberta Payne ("Payne"), her employer, Shay Health Care Services, Inc. ("Shay"), and others, for injuries sustained by Smith while at Payne's home. Ex. C.

**C.     Consolidated Declaratory Judgment Action**

8.     NATIONAL UNION provided a defense to Payne in the <u>Smith</u> suit under a full reservation of rights, and NATIONAL UNION also filed a declaratory judgment action in the Chancery Division of the Circuit Court of Cook County, Illinois, Case No. 06 CH 851, seeking a declaration of its rights and obligations to Payne under the National Union Policy ( "Declaratory Action").

9.     In the Declaratory Action, NATIONAL UNION took the position that it owed no duty to defend or indemnify Payne in connection with the <u>Smith</u> suit because, *inter alia,* Payne was not acting solely in her capacity as an employee of Shay, was acting outside the scope of her employment and/or was not engaged in the conduct of the business of a health care agency at the time of Smith's injury.

10.     The court in the Declaratory Action found that NATIONAL UNION owed a duty to defend Payne, however, the court declined to reach the issue of whether NATIONAL UNION owed a duty to indemnify Payne in advance of any judgment or settlement of the underlying <u>Smith</u> suit.

3

**D.**     **Settlement of the <u>Smith</u> Suit**

11.     The <u>Smith</u> suit ultimately settled in advance of trial, and settlement agreements were executed in approximately January of 2008. NATIONAL UNION, WESTPORT and others contributed toward the settlement of the <u>Smith</u> suit.

12.     As a result of the settlement, the underlying <u>Smith</u> suit as well as the Declaratory Action were both dismissed with prejudice.

**E.**     **Agreement to Arbitrate Between National Union and Westport**

13.     On or about February 25, 2008, NATIONAL UNION and WESTPORT entered into an arbitration agreement (the "Agreement") with respect to a portion of the amount WESTPORT contributed toward the underlying settlement. A true and correct copy of the Agreement is attached hereto as Exhibit "D" and incorporated herein by reference.

14.     Under the Agreement, NATIONAL UNION and WESTPORT agreed to participate in an arbitration, subject to the following terms:

* * *

1.     The arbitration will be binding.

2.     The arbitration will proceed in Chicago, Illinois before a panel of three arbitrators, who will be selected in a manner consistent with the AAACommercial Arbitration Rules and Procedures ("the AAA Rules"). Each party (i.e., National Union and Westport) will select an arbitrator, and, in accordance with the AAA Rules, the third arbitrator will be selected by the two initially selected arbitrators. The parties agree to make their initial arbitrator selections by March 7, 2008.

3.     The panel will decide whether Payne was an insured at the time of the underlying incident on March 27, 2003, and whether her actions at the time fell within the scope of the insuring agreement of the National Union policy at issue.

4

4.  If the panel decides the above issues in the affirmative (i.e., that Payne was an insured and that her conduct was within the scope of the National Union insuring agreement), then National Union shall reimburse Westport for the $200,000.00 it paid toward settlement on Payne's behalf. If the panel finds that Payne was not an insured or was not acting within the scope of the National Union insuring agreement at the time of the underlying incident, then this matter is concluded with neither party owing anything to the other.

5.  The arbitration will proceed as follows: Each party will have the right to submit a written brief and evidentiary exhibits to the arbitration panel in advance of the arbitration. Thereafter, each party will have the right to make an opening statement, present evidence, and to make an argument to the panel. Agreed time periods, yet to be decided, will be imposed during the opening statement and argument, and page limits will be agreed upon for the briefing. The evidence will be limited to the evidence which was produced and/or generated during formal discovery of the Smith v. Payne case and/or National Union v. Payne case (06 CH 581). There will be no additional discovery permitted in preparation for the arbitration. No live testimony will be permitted in the arbitration.

6.  Each party will be responsible for its own costs. The parties will equally split the cost owed to the panel.

* * *

Ex. D at 1-2.

15.    Pursuant to the terms of the Agreement, NATIONAL UNION and WESTPORT agreed to arbitrate only the two specific issues set forth in Paragraph 3 of the Agreement.

16.    Pursuant to the terms of the Agreement, NATIONAL UNION and WESTPORT agreed to limit the evidence which could be submitted during the arbitration to "evidence which was produced and/or generated during formal discovery" of the Smith suit and the Declaratory Action.

17.    Pursuant to the terms of the Agreement, NATIONAL UNION and WESTPORT agreed that the amount NATIONAL UNION would pay WESTPORT in the event of an adverse decision was $200,000.00.

1205508.1

18. Pursuant to the terms of the Agreement, a three-person arbitration panel was selected and the parties each submitted opening and responsive arbitration briefs, along with various exhibits.

19. Within its opening arbitration brief, WESTPORT raised issues beyond the two express issues which the parties agreed to arbitrate under Paragraph 3 of the Agreement, and it requested an amount in excess of $200,000.00 by asserting a claim for interest.

20. Within its response brief, WESTPORT continued to raise issues beyond the two express issues which the parties agreed to arbitrate and it continued to include a claim for interest. In addition, WESTPORT submitted a copy of the underlying settlement agreement as "evidence."

21. The underlying settlement agreement was not produced and/or generated during formal discovery in either the Smith suit or the Declaratory Action.

22. On several occasions, NATIONAL UNION objected to WESTPORT's submissions and its use of the underlying settlement agreement as evidence.

23. A hearing was scheduled for September 12, 2008 before the arbitration panel.

24. On September 11, 2008, the day before the hearing, WESTPORT submitted Supplemental Materials to the arbitration panel consisting of several letters and attachments prepared by Shay's underlying defense counsel, who was retained by NATIONAL UNION, and which were sent to NATIONAL UNION during the course of the Smith suit with copies to WESTPORT as Shay's excess carrier.

25. None of WESTPORT's Supplemental Materials were produced and/or generated during formal discovery in the Smith Suit or the Declaratory Action.

26.     WESTPORT'S Supplemental Materials included attorney-client privileged communications, attorney work product, documents protected from disclosure by joint defense and/or joint interest privileges and/or other confidential materials.

27.     On September 11, 2008, NATIONAL UNION advised the arbitration panel that WESTPORT's prior conduct and its submission on September 11, 2008 constituted a material breach of the Agreement, rendering the Agreement null and void. In light of WESTPORT's breach of the Agreement, NATIONAL UNION also advised the panel that it did not have authority or jurisdiction to proceed with the arbitration or to render any further decisions, and that NATIONAL UNION would not proceed with the hearing. A true and correct copy of NATIONAL UNION's correspondence of September 11, 2008 is attached as Exhibit E and incorporated here by reference.

28.     With the sole exception of the two limited issues set forth in Paragraph 3 of the Agreement, NATIONAL UNION and WESTPORT never agreed to submit issues regarding the breach of the Agreement or other disputes between them to arbitration.

G.      **September 12, 2008 Order Entered by the Panel**

29.     On September 12, 2008, the arbitration panel convened and entered an Order. A true and correct copy of the Order is attached hereto as Exhibit "F" and incorporated herein by reference.

30.     The September 12, 2008 Order states, in part, that "The Panel finds that it has jurisdiction to proceed with the arbitration proceedings." Further, the Order set forth a briefing schedule to determine the propriety of Westport's submissions, the admissibility of Westport's submissions and the remedies which should be applied by the panel. The parties are to submit simultaneous briefs on or before September 30, 2008.

7

31.    On September 17, 2008, WESTPORT submitted correspondence to the panel arguing the merits of its submissions and further suggesting a proposed remedy.  A true and accurate copy of WESTPORT's September 17, 2008 correspondence is attached as Exhibit G.

32.    An actual controversy exists between and among WESTPORT and NATIONAL UNION as to the rights and obligations of the parties under the Agreement, if any, and as to whether WESTPORT's conduct constitutes a material breach of the Agreement.

33.    An actual controversy also exists between and among WESTPORT and NATIONAL UNION as to whether a dispute as to the breach of the Agreement is in and of itself subject to arbitration under the Agreement.

## COUNT I
### (Declaratory Judgment)

34.    Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in Paragraphs 1-33 of this Complaint as though fully set forth herein.

35.    NATIONAL UNION and WESTPORT entered into the Agreement as a contract to arbitrate two limited issues, based upon a defined set of evidence, for an agreed-upon sum of money.

36.    NATIONAL UNION performed all of its obligations under the Agreement.

37.    WESTPORT breached the material terms of the Agreement by:

(1)    Submitting issues to the arbitration panel beyond the two limited issues which the parties agreed to arbitrate;

(2)    Submitting evidence beyond the scope of evidence which the parties agreed to utilize for purposes of the arbitration; and

(3)    Asserting a claim for amounts in excess of the amount the parties agreed to arbitrate.

38.    WESTPORT's conduct constitutes a material breach of the Agreement.

39.    WESTPORT's conduct constitutes substantial nonperformance of the Agreement.

8

1205508.1

40.     NATIONAL UNION was prejudiced by WESTPORT's conduct.

41.     Pursuant to 735 ILCS Section 5/2-701, et. seq., NATIONAL UNION is entitled to a judicial determination concerning the scope and nature of the parties' rights and obligations, if any, under the Agreement.

WHEREFORE, NATIONAL UNION respectfully requests that this Honorable Court enter a judgment finding and declaring as follows:

(a)     That WESTPORT's conduct materially and fundamentally breached the terms of the Agreement;

(b)     That the Agreement is null and void as a result of WESTPORT's conduct;

(c)     Awarding NATIONAL UNION its costs and attorneys' fees it incurred in preparing for the arbitration;

(d)     Awarding NATIONAL UNION its attorneys' fees and costs; and

(e)     Awarding NATIONAL UNION such other and further relief as this Honorable Court deems just and appropriate.

## COUNT II
### (Rescission)

42.     Plaintiff repeats, re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-41 of this Complaint as though fully set forth herein.

43.     When there is no meeting of the minds, rescission is the appropriate remedy.

44.     WESTPORT has asserted that its conduct does not breach or invalidate the terms of the Agreement; it has asked the panel to address issues outside the scope of the Agreement; it maintains that the materials it submitted constitute appropriate evidence under the Agreement; and it maintains that it is entitled to interest.

45.     The parties had no meeting of the minds on the material terms of the Agreement, and, therefore, no contract for arbitration was formed and rescission is the appropriate remedy.

9

46.     Alternatively, a party may terminate or rescind a contract because of substantial nonperformance or breach of the contract by the other party.

47.     WESTPORT fundamentally breached the material terms of the Agreement by:

> (1)    Submitting issues to the arbitration panel beyond the two limited issues which the parties agreed to arbitrate;
>
> (2)    Submitting evidence beyond the scope of evidence which the parties agreed to utilize for purposes of the arbitration; and
>
> (3)    Asserting a claim for amounts in excess of the amount the parties agreed to arbitrate.

48.     As a result of WESTPORT's substantial and fundamental breach of the Agreement, the object and the substance of the Agreement has been defeated and unattainable.

49.     Rescission is the appropriate remedy because NATIONAL UNION has no adequate remedy at law.

WHEREFORE, NATIONAL UNION respectfully requests that this Honorable Court enter a judgment finding and declaring as follows:

> (a)    That WESTPORT's conduct materially and fundamentally breached the terms of the Agreement;
>
> (b)    That the Agreement is null and void as a result of WESTPORT's conduct;
>
> (c)    That the Agreement is rescinded;
>
> (d)    Awarding NATIONAL UNION the attorneys' fees and costs it incurred in preparing for the arbitration;
>
> (e)    Awarding NATIONAL UNION its attorneys' fees and costs; and
>
> (f)    Awarding NATIONAL UNION such other and further relief as this Honorable Court deems just and appropriate.

## COUNT III
### (Declaratory Judgment)

50.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in Paragraphs 1-49 of this Complaint as though fully set forth herein.

10

51. With the exception of the two express issues stated in the Agreement, NATIONAL UNION did not agree to submit any other disputes to arbitration.

52. With the exception of the two express issues stated in the Agreement, NATIONAL UNION did not agree to submit any issues regarding the breach of the Agreement to arbitration.

53. As a result of WESTPORT's conduct and its breach of the Agreement, NATIONAL UNION advised the panel on September 11, 2008 that it did not have any further authority or jurisdiction to proceed or to render any further decisions as to the disputes between NATIONAL UNION and WESTPORT.

54. The panel issued an order on September 12, 2008 stating that "[t]he Panel finds that is has 'jurisdiction' to proceed with the arbitration proceeding." (emphasis added)

55. The September 12, 2008 Order also directs the parties to submit briefs "related to the issues raised by the submissions made by Westport," and provides that the parties must address "the propriety of Westport's submissions" and "the admissibility of Westport's submissions" in their briefs.

56. The Agreement did not provide the panel with authority to decide the issue of "jurisdiction." Ex. D at 1-2.

57. NATIONAL UNION did not agree to submit the issue of "jurisdiction" to the arbitrators.

58. The terms of the Agreement did not provide the panel with authority to decide disputes arising from a party's submissions, including disputes about "the propriety" and/or "the admissibility" of the submissions, as those issues bear on whether the Agreement itself was breached. Ex. D at 1-2.

11

59.     NATIONAL UNION did not agree to arbitrate disputes regarding a party's breach of the Agreement.

60.     NATIONAL UNION did not agree to arbitrate the issue or determination of an appropriate "remedy or remedies" for a party's "improper" submissions or breach of the Agreement. Ex. D at 1-2.

61.     As of September 11, 2008, NATIONAL UNION informed the arbitration panel that the agreement was null and void because WESTPORT had fundamentally and materially breached the agreement, therefore, it did not have the authority to determine any disputes between NATIONAL UNION and WESTPORT.

62.     As of September 11, 2008, NATIONAL UNION informed the arbitration panel that the panel lacked the authority and jurisdiction to determine any issues as between NATIONAL UNION and WESTPORT.

63.     The panel's Order of September 12, 2008 exceeded its authority.

WHEREFORE, NATIONAL UNION respectfully requests that this Honorable Court enter a judgment finding and declaring as follows:

> (a)     That WESTPORT breached the terms of the Agreement;
>
> (b)     That the Agreement is null and void as a result of WESTPORT's breaches;
>
> (c)     That the Agreement has been rescinded as a result of WESTPORT's breaches;
>
> (d)     That the panel exceeded its authority in its September 12, 2008 Order;
>
> (g)     Awarding NATIONAL UNION the attorneys' fees and costs it incurred in preparing for the arbitration;
>
> (h)     Awarding NATIONAL UNION attorneys' fees and costs; and
>
> (i)     Awarding NATIONAL UNION such other and further relief as this Honorable Court deems just and appropriate.

12

## COUNT IV
### (Permanent Injunction)

64.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in Paragraphs 1-63 of this Complaint as though fully set forth herein.

65.     The Illinois Uniform Arbitration Act (710 ILCS 5/1 et seq.) empowers a court, upon application of party to a dispute, to stay arbitration.

66.     The panel exceeded its authority by deciding the following issues:  (a) that it has jurisdiction to proceed with the arbitration proceedings; (b) that it can determine the propriety of a party's submissions; and (c) that it can determine the appropriate remedy for improper submissions.

67.     The panel's September 12, 2008 Order indicates that the panel and WESTPORT intend to proceed with arbitration, despite NATIONAL UNION's objections to WESTPORT's breach of the Agreement and despite NATIONAL UNION's stated position that the panel did not have authority or jurisdiction to proceed.

68.     Unless enjoined, the panel and WESTPORT could attempt to proceed with the arbitration, despite NATIONAL UNION's objections thereto.

69.     If the panel and WESTPORT are not enjoined from proceeding with the arbitration, there is a very real possibility that the panel will arbitrate issues that NATIONAL UNION did not agree to submit to arbitration.

70.     The arbitration poses the threat of irreparable injury to NATIONAL UNION, which rightfully objected to the arbitration and did not agree to arbitrate a dispute regarding a breach of the Agreement.

71.     NATIONAL UNION has no adequate remedy at law.

13

WHEREFORE, NATIONAL UNION respectfully requests that this Honorable Court enter a judgment finding, declaring and ordering as follows:

    (a)    That WESTPORT breached the terms of the Agreement;

    (b)    That the Agreement is null and void as a result of WESTPORT's breaches;

    (c)    That the Agreement has been rescinded as a result of WESTPORT's breaches;

    (d)    That the panel exceeded its authority in its September 12, 2008 Order;

    (e)    That the panel is permanently enjoined from issuing any further rulings, conducting any further proceedings, or entering any further awards in relation to this matter;

    (f)    That the panel and WESTPORT are permanently enjoined from proceeding with arbitration;

    (g)    Awarding NATIONAL UNION the attorneys' fees and costs it incurred in preparing for the arbitration;

    (h)    Awarding NATIONAL UNION attorneys' fees and costs; and

    (i)    Awarding NATIONAL UNION such other and further relief as this Honorable Court deems just and appropriate.

## COUNT V
### (Declaratory judgment)

72.    Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in Paragraphs 1-71 of this Complaint as though fully set forth herein.

73.    WESTPORT is not entitled to reimbursement of any amounts it may have contributed toward the underlying settlement from NATIONAL UNION under the National Union Policy or otherwise.

WHEREFORE, NATIONAL UNION respectfully requests that this Honorable Court enter a judgment finding, declaring and ordering as follows:

    (a)    That WESTPORT breached the terms of the Agreement;

14

(b)     That the Agreement is null and void as a result of WESTPORT's breaches;

(c)     That the Agreement has been rescinded as a result of WESTPORT's breaches;

(d)     That the panel exceeded its authority in its September 12, 2008 Order;

(e)     That the panel is permanently enjoined from issuing any further rulings, conducting any further proceedings, or entering any further awards in relation to this matter;

(f)     That the panel and WESTPORT are permanently enjoined from proceeding with arbitration;

(g)     That WESTPORT is not entitled to any other or further relief from NATIONAL UNION;

(h)     That NATIONAL UNION owes no obligation to reimburse WESTPORT for any amounts in connection with the underlying settlement, whether under the National Union Policy or otherwise;

(i)     Awarding NATIONAL UNION the attorneys' fees and costs it incurred in preparing for the arbitration;

(j)     Awarding NATIONAL UNION attorneys' fees and costs; and

(k)     Awarding NATIONAL UNION such other and further relief as this Honorable Court deems just and appropriate.

## COUNT VI
### (Breach of Contract)

74.     Plaintiff repeats, re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-33 of this Complaint as though fully set forth herein.

75.     NATIONAL UNION performed all of its obligations under the Agreement.

76.     However, WESTPORT breached the material terms of the Agreement by:

(1)     Submitting issues to the arbitration panel beyond the two limited issues which the parties agreed to arbitrate;

(2)     Submitting evidence beyond the scope of evidence which the parties agreed to utilize for purposes of the arbitration;

15

(3)    Asserting a claim for amounts in excess of the amount the parties agreed to arbitrate; and

(4)    Failing to act with good faith in its performance of its duties under the Agreement.

77.    As a result of WESTPORT's material breach of the Agreement, NATIONAL UNION has suffered damages.

WHEREFORE, NATIONAL UNION respectfully requests that this Honorable Court enter a judgment for NATIONAL UNION and against WESTPORT and award it the attorneys' fees and costs it incurred in preparing for the arbitration, it's attorneys' fees and costs, and other and further relief as this Honorable Court deems just and appropriate.

MICHELLE R. VALENCIC
CLAUSEN MILLER P.C.

WILLIAM P. PISTORIUS
MICHELLE R. VALENCIC
CHRISTOPHER M. KAHLER
CLAUSEN MILLER P.C.
Firm I.D. No. 90181
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010
Attorneys for NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

16

# PLAINTIFF'S
# EXHIBIT A



NATIONAL UNION
FIRE INSURANCE COMPANY
OF PITTSBURGH, PA.

1750 CNG TOWER PITTSBURGH, PA 15222

ADMINISTRATIVE OFFICES:
70 Pine Street, New York, New York 10270

(a capital stock company, herein called the Company)

## HEALTH CARE AGENCY PROFESSIONAL LIABILITY POLICY

### DECLARATIONS

**NOTICE: THIS IS A CLAIMS MADE POLICY. COVERAGE IS LIMITED GENERALLY TO LIABILITY FOR CLAIMS FIRST MADE AGAINST YOU AND REPORTED TO US WHILE THE POLICY IS IN FORCE. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS POLICY COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

New
POLICY NUMBER: HHA-6915000(03)

**Item 1.** NAMED INSURED: Shay Health Care Services, Inc.;
Shay Nursing, Inc.

ADDRESS: 13820 South Cicero Avenue
Crestwood, IL 60445

**Item 2.** **(a) POLICY PERIOD:**

From: November 2, 2002        To:    November 2, 2003

12:01 A.M., Standard Time, at the address stated in Item 1.

**(b) RETROACTIVE DATE:** _____ November 2, 2001 _____

**Item 3.** LIMITS OF COVERAGE:

$ ___ 1,000,000 ___ each Wrongful Act or Series of Continuous or Related Acts

$ ___ 3,000,000 ___ aggregate

**Item 4.** DEDUCTIBLE: $ ___ 1,000.00 ___ each Wrongful Act

**Item 5.** PREMIUM: $ ___ 23,914.00 ___

**Item 6.** Forms and Endorsements Attached at Inception of Policy:

___ 60746(7/94), End. #1, End. #2, End. #3, End. #4 ___

PLAINTIFF'S
EXHIBIT
A

Broker Name & Address:
G. A. Crandall & Co., Inc.
6851 West 167th Street
Tinley Park, IL 60477

Countersigned by: _____



## NATIONAL UNION
## FIRE INSURANCE COMPANY
## OF PITTSBURGH, PA.

60746

1750 CNG TOWER PITTSBURGH, PA 15222

ADMINISTRATIVE OFFICES:
70 Pine Street, New York, New York 10270

(a capital stock company, herein called the Company)

**NOTICE: THIS IS A CLAIMS MADE POLICY. COVERAGE IS LIMITED GENERALLY TO LIABILITY FOR CLAIMS FIRST MADE AGAINST YOU AND REPORTED IN WRITING TO US WHILE THE POLICY IS IN FORCE. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS POLICY COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

## HEALTH CARE AGENCY PROFESSIONAL LIABILITY POLICY

### TABLE OF CONTENTS

I. What This Agreement Covers .................................................................2

II. Additional Benefits.............................................................................2

III. Exclusions – Claims Not Covered .........................................................3

IV. Limits of Coverage.............................................................................4

V. Deductible .......................................................................................4

VI. Other Provisions Affecting Coverage ....................................................5

VII. Definitions ......................................................................................7

k.  arising from liability you assume under any contract or agreement. This exclusion will not apply to liability:

    (i)  you assume under a contract or agreement, which arises solely from your wrongful act: or

    (ii)  which would arise against you in the absence of the contract or agreement.

l.  arising from services performed:

    (i)  by a physician, but this exclusion shall not apply to services performed solely as a medical director;

    (ii)  by a nurse midwife, nurse anesthetist, or physicians' assistant.

m.  arising from a wrongful act as a member of a formal accreditation or professional review or licensing board;

n.  for fines, penalties, punitive, exemplary or multiplied damages. However, if permitted by law we will pay up $25,000 in punitive, exemplary or multiplied damages, as part of the limits of coverage this policy otherwi provides.

o.  arising from any wrongful act covered under any policy in effect before this policy. This exclusion applie whether or not the prior policy has any limits of coverage remaining;

p.  arising from any actual, alleged, attempted or proposed erotic physical contact; however, this exclusion sh; not apply unless there is a judgment or final adjudication against you on a cause of action of which suc conduct is a requisite element.

q.  arising from a defective product, other than a drug or other pharmaceutical product dispersed by pharmacist you provide:

t.  arising from the actual, alleged, or threatened, discharge, dispersal, seepage, migration, release, or escape pollutants, or any direction, or request, to test for, monitor, cleanup, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of pollutants.

## IV.  LIMITS OF COVERAGE

The limits shown in the Declarations to this policy and the information contained in this section fix the most we pay regardless of the number of:

- persons or organizations covered by this policy:
- claims made or suits brought.

**Each Wrongful Act Limit.** This is the most we'll pay for all loss that results from a single wrongful act.

**Aggregate Limit.** This is the most we'll pay for all loss covered under this policy.

**Reported Acts.** A claim may first be made after the policy period, under the Reported Acts coverage in Section if this happens, the claims will be subject to the limit applying to the policy period in which the first wrongful a was reported.

**Continuous or Related Wrongful Acts.** All claims arising from continuous or related wrongful acts shall t treated as one claim. The limit in effect when the first claim is made and reported to us shall apply.

## V.  DEDUCTIBLE

You will be responsible for the deductible amount shown in the Declarations. Expenses we incur in investigatir and defending claims and suits are included in the deductible. The deductible applies to each wrongful act ar you may not insure it. All claims arising from a single wrongful act or continuous or related wrongful acts shall t subject to one deductible.

We may pay all or part of the deductible to settle a claim or suit. You agree to repay us promptly after we noti you of the settlement.

## VI. OTHER PROVISIONS AFFECTING COVERAGE

### a. Where Coverage Applies

We cover wrongful acts in the United States of America, its territories and possessions, Puerto Rico Canada, but only if a claim is made and a suit is brought for such wrongful act in the United States America, its territories and possessions, Puerto Rico or Canada.

### b. What You Must Do In The Event Of A Wrongful Act, Claim or Suit.

Before coverage will apply, you must notify us as soon as possible of a wrongful act which may result claim or suit against you.

Notice should include:

- How, when and where the wrongful act took place;
- Names and addresses of any witnesses and injured people;
- Nature and location of any injury or damage.

Before coverage will apply, you must notify us in writing of any claim or suit against you as soon as poss You must:

- Immediately record the specifics of the claim and the date you received it;
- Send us copies of all demands, suit papers or other legal documents you receive, as soon as possible

### c. Your Assistance and Cooperation

You agree to cooperate with and help us:

- Make settlements;
- Enforce any legal rights you or we may have against anyone who may be liable to you;
- Attend depositions, hearings and trials;
- Secure and give evidence, and obtain the attendance of witnesses.

You will not admit any liability, assume any financial obligation or pay out any money without our consent. If you do, it will be at your own expense.

### d. Optional Reporting Endorsement

If you or we cancel or do not renew this policy, you have the right to buy a reporting endorsement. Yo not have this right if we cancel for non-payment of premium.

The endorsement applies only to covered claims from a wrongful act after the retroactive date and b the end of the policy period. The claim must first be made against you and reported to us in writing, afte policy period.

To obtain this reporting endorsement you must request it in writing within 60 days after the policy pe ends and pay the premium when due. If you do so, we can't cancel the endorsement. If we don't receiv written request and payment as required, you may not exercise this right at a later date. If you cance endorsement, we will not pay a return premium.

Any change in premium or terms from this policy shall not be considered a refusal to renew.

The provision of an Optional Reporting Endorsement does not increase the aggregate limit of cove described in the Limits of Coverage section of this policy.

### e. Other Insurance

A loss covered under this policy may also be covered under another policy you have. If it is, our polic apply only in excess of such other coverage no matter how such other coverage is described. This claus not apply to coverage which is expressly stated to apply in excess of this specific policy.

This clause does not affect Exclusion o., nor the provisions of the Limits of Coverage section of this policy.

**f.  Recovering Damages from a Third Party**

You may be able to recover all or part of a loss from someone other than us. You therefore must do all that possible after a loss to preserve any such right of recovery. If we make a payment under this policy that rig of recovery will belong to us. You will do whatever is necessary, including signing documents, to help obtain that recovery.

**g.  Policy Changes**

This policy contains all the agreements between you and us concerning this insurance. The first name insured in the Declarations is authorized to make changes in this policy with our consent. This policy can o be changed by a written endorsement we issue and make a part of this policy.

**h.  Assignment**

You cannot assign or transfer your interest in this policy without our written consent attached to the policy.

If you die or are declared legally incompetent, your rights and duties will be transferred to your le representative; but only while acting within the scope of his or her duties as such.

**i.  Special Rights and Duties of First Named Insured**

You agree that when there is more than one person or organization covered under this policy, the first name insured in the Declarations shall act on behalf of all of you as to:

* giving and receiving notice of cancellation;
* payment of premiums and receipt of return premiums;
* acceptance of any endorsements to this policy.

**j.  Declarations**

By accepting this policy, you agree that the statements in the application and Declarations are true, and th are your agreements and representations.

This policy is issued in reliance upon the truth of those representations. This policy includes all of agreements between you and us or our authorized agents concerning this insurance.

**k.  Cancellation**

This policy may be canceled by you by surrender thereof to us or any of our authorized agents or by mail to us written notice stating when thereafter the cancellation shall be effective. This policy may be canceled us by mailing to you at the address shown in this policy written notice stating when, not less than 60 da thereafter, such cancellation shall be effective. However, if we cancel this policy because you have failed pay a premium when due, this policy may be canceled by us by mailing a written notice of cancellation you at the address shown in this policy stating when, not less than 10 days thereafter, such cancellation sh be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.

The time of the surrender or the effective date and hour of cancellation stated in the notice shall become end of the policy period. Delivery of such written notice either by you or by us shall be equivalent to maili If you cancel, the unearned premium shall be computed in accordance with the customary short rate ta and procedure. If we cancel, unearned premium shall be computed pro rata. Premium adjustment may made either at the time cancellation is effected or as soon as practicable after cancellation becomes effecti but payment or tender of unearned premium is not a condition of cancellation.

## VII. DEFINITIONS

1. **automobile** means a land vehicle, self-propelled or not, a trailer, or a semitrailer.

   This includes any machinery or apparatus attached, whether or not subject to motor vehicles registration designed for use principally on public roads.

2. **bodily injury** means bodily harm, sickness, or disease, including death, resulting therefrom.

3. **claim(s)** means a demand for money.

4. **health care agency** means an agency supplying, for a fee, health care providers for the home, or a hospit clinic or other health care facility.

5. **policy period** means the period commencing on the effective date shown in the Declarations. This peri ends on the earlier of the expiration date of the effective date of cancellation of this period. If you become insured under this policy after the effective date, the policy period begins on the date you became insured.

6. **pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant, including: smoke, vapor, so fumes, acids, alkalis, chemicals and waste. "Waste" includes but is not limited to material to be recyclc reconditioned or reclaimed, as well as medical waste.

7. **property damage** means (1) physical injury to, or destruction of, tangible property including the loss of use it; or (2) loss of use of tangible property, which has not been physically injured or destroyed.

8. **retroactive date** means the date specified as such in the Declarations.

9. **we, us or our** means the company issuing this policy.

10. **wrongful act** means any actual or alleged negligent act, error, or omission.

11. **you or your** means the individual, partnership, or corporation designated as Named Insured in Item 1 of t Declarations. This includes any partner, officer, director, medical director, employee, trustee or volunte thereof, solely while acting in his or her capacity as such.

**IN WITNESS WHEREOF**, we have caused this policy to be signed by our president and secretary and countersign where required by law on the Declarations page by our duly authorized representative.

_Elizabeth M. True_
Secretary

_William Smith_
President

## ILLINOIS
## AMENDATORY ENDORSEMENT

This endorsement, effective 12:01 AM,     November 2, 2002     forms a part of

policy no. : HHA6915000(03) issued to Shay Health Care Services, Inc; Shay
Nursing, Inc.

by: National Union Fire Insurance Company of Pittsburgh, PA

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which
issued this policy; and 2) "you", "your", "Named Insured", and "Insured" mean the Named Corporation,
Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3)
"Other Insured(s)" means all other persons or entities afforded coverage under the policy.

### CANCELLATION AND NONRENEWAL

A.     The cancellation condition of this policy is replaced by the following:

CANCELLATION

1.     The Named Insured may cancel this policy by mailing to the Insurer advance written
notice of cancellation.

2.     If this policy has been in effect for sixty (60) days or less, the Insurer may cancel this
policy by mailing to the Named Insured written notice of cancellation at least:

   a.     Ten (10) days before the effective date of cancellation if the Insurer
cancels for nonpayment of premium; or

   b.     Thirty (30) days before the effective date of cancellation if the Insurer
cancels for any other reason.

3.     If this policy has been in effect for more than sixty (60) days the Insurer may cancel
this policy only for one or more of the following reasons:

   a.     Nonpayment of premium;

   b.     The policy was obtained through a material misrepresentation;

   c.     The Named Insured or Other Insured(s) have violated any of the terms
and conditions of the policy;

   d.     The risk originally accepted has measurably increased;

   e.     Certification to the Director of Insurance of the loss of reinsurance by
the Insurer which provided coverage to the Insurer for all or a
substantial part of the underlying risk insured; or

   f.     A determination by the Director that the continuation of the policy
could place the Insurer in violation of the insurance laws of this State.

## ENDORSEMENT

This endorsement, effective 12:01 AM,     November 2,   2002     forms a part of

Policy No. HHA6915000(03)  issued to   Shay Health Care Services, Inc.;
Shay Nursing, Inc.

by:  National Union Fire Insurance Company of Pittsburgh, PA

## HEALTH CARE AGENCY PROFESSIONAL LIABILITY PROGRAM

### ILLINOIS AMENDATORY ENDORSEMENT
### PUNITIVE DAMAGES

In consideration of the premium charged, it is hereby agreed that exclusion (n) of Section III., EXCLUSIONS - CLAIMS NOT COVERED is deleted in its entirety and replaced by the following:

n. for fines, penalties, punitive, exemplary or multiplied damages.

All other terms, conditions and exclusions shall remain the same.

AUTHORIZED REPRESENTATIVE

57972(7/93)
Endorsement #2

## ENDORSEMENT

This endorsement, effective 12:01 AM,  November 2, 2002   forms a part of

Policy No. HHA6915000(03) issued to  Shay Health Care Services, Inc.;
                                      Shay Nursing, Inc.

By  National Union Fire Insurance Company of Pittsburgh, PA

### ADDITIONAL PARTY(S) COVERED ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed
that the following listed Additional Party(s) Covered shall be considered in
the definition of you in this policy, but solely with respect to their
liability for activities of the Named Insured named in item #1 of the
Declarations of this policy.

It is further understood and agreed that this insurance does not apply to any
other liability of the Additional Party covered and this inclusion shall not
serve to increase our limit of liability.

### LIST OF ADDITIONAL PARTY(S) COVERED

### NONE

All other terms and conditions of the policy remain unchanged.

AUTHORIZED REPRESENTATIVE

53993(8/92)
Endorsement #3

## Subsidiary and Acquisition Endorsement

This endorsement, effective 12:01 AM,    November 2, 2002    forms a part of

Policy No. HHA6915000(03) issued to   Shay Health Care Services, Inc.; Shay
                                      Nursing, Inc.

by:  National Union Fire Insurance Company of Pittsburgh, PA

The policy is hereby amended as follows:

Section VII, DEFINITIONS, Item 11 "you or your" is amended to include:

Any health care agency in which the Named Insured owns more than 50% of the issued and outstanding voting stock prior to the Policy Period.

Furthermore, the Named Insured shall also include any company in which the Named Insured acquires more than 50% of the issued and outstanding voting stock during the Policy Period ("acquired company") or any newly created company ("created company"), but only upon the condition that within forty-five (45) days of such acquisition or creation you shall have provided us with full particulars of the "acquired or created company" and you shall have agreed to any additional premium and/or amendment of the provisions of this policy required by us relating to such company.

Notwithstanding the above, the Named Insured shall not include any "acquired or created company" whose operations are not included within the definition of health care agency.

Furthermore, coverage does not apply to any liability that occurred before you acquired more than 50% of the issued and outstanding voting stock of any additional Named Insured.

All other terms, conditions and exclusions remain unchanged.

<u>AUTHORIZED REPRESENTATIVE</u>

62189 (3/95)
Endorsement #4

# PLAINTIFF'S EXHIBIT B

# WESTPORT INSURANCE CORPORATION

5200 Metcalf Avenue, P.O. Box 2979, Overland Park, Kansas 66201-1379 - (800) 241-3470

## COMMERCIAL EXCESS LIABILITY AND UMBRELLA LIABILITY POLICY

### DECLARATIONS

1. **NAMED INSURED:**
   Shay Health Care Services, Inc.;
   Shay Nursing, Inc.

   **Policy No.** SBT003153

   **Renewal of** NEW

   ( ) Individual  ( ) Joint Venture  ( ) Partnership
   (X) Corporation  ( ) Other

   **ADDRESS:**
   13820 South Cicero Avenue
   Crestwood, IL 60445

2. **POLICY PERIOD:**   From: November 2, 2002  To: November 2, 2003
   (12:01 A.M. STANDARD TIME AT THE MAILING
   ADDRESS OF THE NAMED INSURED)

3. **RETROACTIVE DATE:** _____November 2, 2001_____
   (APPLICABLE TO CLAIMS MADE COVERAGE ONLY)

4. **LIMIT OF LIABILITY:** Each Occurrence          $3,000,000

   Products/Completed Operations
   (Aggregate Limit)          $3,000,000

   General Aggregate Limit
   (other than Products/
   Completed Operations)      $3,000,000

5. **LIMIT RETAINED BY THE INSURED:**   $10,000 (Coverage B only)

6. **PRIMARY INSURANCE:**          See Schedule Attached

S 001754

EU-01-(04/96)                    Page 1 of 2                    (Continued)



PLAINTIFF'S EXHIBIT B

(Continued)

7. PREMIUM COMPUTATION:
   Basis of Premium - (X) Flat Charge    ( ) Adjustable

   If adjustable, adjustment basis is per _____ of _____

   | Estimated Exposure | Rate | Deposit Premium |
   |---|---|---|
   | | | $ |
   | Annual Premium | $ 12,745.00 | |
   | Policy Minimum Earned Premium | $ | |

8. ENDORSEMENTS AT INCEPTION: (EU-01-04/96), (EU-02-04/97), EU-03-(1/95), EUE118(1/95), EUE119(1/95), EUE124(1/95), EUE125IL(6/95), EUE148IL(6/95), EUE150(1/95), EUE156(1/95), EUE168(1/95), EUE170(1/95), EUE172IL(7/95), EUE196(06/96), EUF109(1/95), EUF133(03/96), EUF148IL(7/95), EUF155(06/96), WIC-IL(95), WIC-IL-NOTICE(03/97)

Issue Date: 11/26/02  sm        at: Smith, Bell, Thompson by _____

Countersigning Agent

## SCHEDULE OF PRIMARY INSURANCE

| TYPE OF COVERAGE | INFORMATION | POLICY LIMITS |
|---|---|---|
| COMMERCIAL GENERAL LIABILITY<br><br>(X) OCCURRENCE FORM<br>( ) CLAIMS MADE FORM | INSURER:<br>Granite State<br>Insurance Company<br><br>POLICY NUMBER:<br>LX-2633386-0<br><br>POLICY PERIOD:<br>11/02/02 to 11/02/03 | $ 1,000,000 EACH OCCURRENCE<br><br>$ 1,000,000 PERSONAL AND ADVERTISING INJURY<br><br>$ 2,000,000 GENERAL AGGREGATE<br>$ 1,000,000 PRODUCTS – COMPLETED OPERATIONS AGGREGATE |
| AUTOMOBILE LIABILITY | INSURER:<br>Acuity Insurance<br><br>POLICY NUMBER:<br>K24026-3<br><br>POLICY PERIOD:<br>11/02/02 to 11/02/03 | BODILY INJURY:<br>$_____ EACH PERSON<br>$_____ EACH OCCURRENCE<br><br>PROPERTY DAMAGE:<br><br>$_____ EACH OCCURRENCE<br><br>COMBINED SINGLE LIMIT:<br>$ 1,000,000 |
| EMPLOYERS LIABILITY | INSURER:<br>Excluded<br><br>POLICY NUMBER:<br><br>POLICY PERIOD:<br>_____ to _____ | $_____ EACH ACCIDENT<br><br>$_____ DISEASE POLICY LIMIT<br><br>$_____ EACH EMPLOYEE DISEASE POLICY LIMIT |



## SCHEDULE OF PRIMARY INSURANCE
### (Continued)

| TYPE OF COVERAGE | INFORMATION | POLICY LIMITS |
|---|---|---|
| MISCELLANEOUS LIABILITY:<br>Professional Liability<br>DESCRIBE | INSURER:<br>National Union Fire<br>Insurance Company | $ 1,000,000 OCCURRENCE |
| ( ) OCCURRENCE FORM<br>(X) CLAIMS MADE FORM | POLICY NUMBER:<br>HHA6915000(03) | $ 3,000,000 AGGREGATE |
| RETROACTIVE DATE:<br>November 1, 2001 | POLICY PERIOD:<br>11/02/02 to 11/02/03 | |
| MISCELLANEOUS LIABILITY:<br>Employee Benefits Liability<br>DESCRIBE | INSURER: | $_____ EACH OCCURRENCE |
| ( ) OCCURRENCE FORM<br>( ) CLAIMS MADE FORM | POLICY NUMBER: | $_____ AGGREGATE |
| RETROACTIVE DATE: | POLICY PERIOD:<br>_____ to _____ | |
| MISCELLANEOUS LIABILITY:<br>DESCRIBE | INSURER: | $_____ EACH OCCURRENCE |
| | POLICY NUMBER: | $_____ AGGREGATE |
| ( ) OCCURRENCE FORM<br>( ) CLAIMS MADE FORM | | |
| RETROACTIVE DATE: | POLICY PERIOD: | |

⑦

# WESTPORT INSURANCE CORPORATION

**EXCESS INSURANCE Policy**

(herein called the Company)

Various provisions in this policy restrict coverage. This policy may _____ _____ _____ _____ ge under Coverage A - Excess Liability. Read the entire policy carefully to determine your rights and duties, and what is and is not covered. We will not pay sums or perform services unless explicitly provided for in this policy.

Wherever boldfaced in this policy the words **you** and **your** refer to the named insured shown in the Declarations, and any other person or organization qualifying as a named insured under this policy. The words **we**, **us** and **our** refer to the Company providing this insurance.

The word **insured** means any person or organization qualifying as such under the definition found in the DEFINITIONS Section.

Other words and phrases that are boldfaced have special meaning. Refer to the DEFINITIONS Section.

## Insuring Agreements

Section I.     Coverages

A.     Coverage A - Excess Liability

This insurance applies only to damages covered by the **primary insurance** and is subject to the same terms, conditions, exclusions, definitions and limitations as the **primary insurance** except as it relates to:

1.     Premium, subrogation, cancellation, **other insurance**, an obligation to investigate and defend, the limits of liability, payment of expenses and extended reporting period; and

2.     Any renewal agreement and any term, condition, exclusion or limitation included in this policy.

We will pay on behalf of the **insured** those sums in excess of **primary insurance**, that the **insured** becomes obligated to pay as damages for liability imposed on the insured by law or assumed under an **insured contract** provided:

1.     They are caused by an **occurrence** which takes place during our policy period, if the **primary policy** applies on this basis; or

2.     **Claims** are first made against the **insured** during our policy period or where applicable, the extended reporting period and the **occurrence** takes place on or after the Retroactive Date shown in the Declarations of this policy and prior to the termination of this policy, if the **primary policy** applies on a **claims** made basis.

EU-01 (1/95)              Page 1 of 22                    S 001758                    (8)

If a **primary policy** provides coverage for a **claim** under an extended reporting period, then coverage under this policy will apply to that **claim** in a like manner, provided:

1. Coverage we afford will only be excess of coverage under an extended reporting period provided by the **primary policy;**

2. It is caused by an **occurrence** which takes place on or after the retroactive date shown in the Declarations of this policy and prior to the termination of this policy;

3. The extended reporting period will not reinstate or increase the limits of liability of this policy or extend **our** policy period; and

4. If the primary policy requires a written request from **you** in order for its extended reporting period to apply to such **claim**, then;

   a. **We** must also receive a written request from **you** no later than sixty (60) days after the termination of this policy, and

   b. **You** must promptly pay an additional premium to **us** when due.

   The amount of the additional premium will be determined by **us**. This premium for **our** extended reporting period will not exceed 200% of the annual premium of this policy and will be deemed fully earned.

Notwithstanding anything to the contrary contained above, if **primary insurance** or **other insurance** does not pay a loss, for any reason other than exhaustion of their limit of insurance, then **we** shall not pay such loss.

B. Coverage B - Umbrella Liability

**We** will pay on behalf of the **insured** those sums in excess of the **retained limit**, that the **insured** becomes obligated to pay as damages for liability imposed on the **insured** by law or assumed under an **insured contract** provided such damages are caused by an **occurrence** which takes place during **our** policy period because of:

1. **Personal Injury**

2. **Property Damage**

However, Coverage B shall not apply to any **claim** for which:

1. Insurance is afforded under Coverage A.

2. Applicable **primary insurance** is listed in the Schedule of Primary Insurance, whether collectible or not, or for which insurance is provided by **other insurance;** or

3. Insurance would have been provided except for exhaustion of the limit of insurance of a **primary policy.**

## Section II.    Defense and Expense

### A.    Defense

We will assume charge of the settlement or defense of any claim against the **insured** seeking damages to which this policy applies,

1.    Under Coverage A when the limits of liability of the primary insurance and other insurance have been exhausted by payment of judgments or settlements;

2.    Under Coverage B when damages are claimed for personal injury or property damage covered by this policy and to which no primary insurance or other insurance applies.

When insurance is available to you under any primary insurance or other insurance, we will have the right and opportunity, although not the obligation, to associate with the insurers of those policies in the defense and control of any claim which, in our opinion, might exceed the limits of the primary insurance or other insurance.

We will not be required to defend any claim after the applicable limit of this policy has been exhausted by payment of judgments or settlements.

### B.    Expense

With respect to any **claim** for which we assume charge of the settlement or defense, we will pay in addition to the applicable limit of liability:

1.    Expenses we incur.

2.    Costs taxed against the **insured.**

3.    The cost of appeal bonds or bonds to release attachments, but only for amounts within the applicable limit of liability.  We do not have to furnish these bonds.

4.    The **insured's** expenses incurred at our request, including actual loss of earnings not to exceed $150 per day.

5.    Pre-judgment interest awarded against the **insured** on that part of the judgment we pay.  If we make an offer to pay prior to judgment, we will not pay any pre-judgment interest on the amount we offer to pay for the period of time following that offer.

6.    Interest on the amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of liability.



With respect to any **claim** to which this policy applies for which **we** do not assume charge of the settlement or defense:

1.   **We** will pay expenses we directly incur.

2.   **We** will not pay expenses incurred by **you** or others, or included in any **primary insurance or other insurance.**

Section III.   Limits of Liability

A.  Coverage A - Excess Liability

The limit of liability stated in the Declarations as applicable to each **occurrence** shall be the total limit of **our** liability for all damages arising out of any one **occurrence.**

If the limit of liability of the **primary insurance** has been exhausted by payment of **claims** or **claims** expense, this policy will continue in force as **primary insurance.** If the limit of liability of the **primary insurance** has been reduced by payment of **claims** or **claims** expense, this policy will drop down to become immediately excess of the reduced primary limit. This provision will apply to **occurrences** which take place before the expiration of this policy or the **primary insurance,** whichever comes first, or to **claims** made against the **primary policy,** if that policy provides coverage on basis of **claims** which are first made during the **primary policy** period.

B.  Coverage B - Umbrella

The limit of liability stated in the Declarations as applicable to each **occurrence** shall be the total limit of **our** liability for all damages arising out of any one **occurrence.**

C.  Coverages A and B - Excess Liability and Umbrella

In addition to the provisions limiting **our** liability stated above, regardless of:

1.   The number of persons or organizations who are **insureds** under this policy;

2.   The number of coverages provided under this policy;

3.   The number of **claims** made and **claims** brought against any or all **insureds;**

4.   The number of persons or organizations making claims or bringing **claims,**

in no event shall the total limits of **our** liability for all damages under Coverage A or Coverage B for any one **occurrence** exceed the limit of liability stated in the Declarations as each **occurrence** as respects all injury or damage to which this policy applies.

S 001761



Subject to our limit of liability for each occurrence, the limit of liability stated in the Declarations as aggregate is the most we will pay for the damages under Coverage A and B because of injury arising out of:

1.   All hazards (other than the **products-completed operations hazard**) for which the terms of the **primary insurance or other insurance** provide coverage subject to an aggregate limit (regardless of the number of aggregate limits in the **primary insurance or other insurance**);

2.   The **products-completed operations hazard** (which is a separate aggregate limit in the amount shown in the Declarations).

The limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the limits of liability.

## Exclusions

The titles of the varied paragraphs of the Exclusions section of this policy are inserted solely for convenience and reference and are NOT to be deemed in any way to limit or affect the provisions to which they relate.

I.   Coverages A and B - Excess Liability and Umbrella
This policy does NOT apply:

A.   Asbestos:

1.   To **personal injury** caused by, or aggravated by exposure, inhalation, consumption or absorption of asbestos fibers or dust; or

2.   To **property damage,** including any cost of monitoring, clean up, removal or abatement, to any property because of actual or alleged presence or release of asbestos in any form.

B.   Expected or Intended:

To **personal injury** or property damage expected or intended by the **insured. This** exclusion does not apply to **personal injury** or **property damage** resulting from the use of reasonable force to protect persons or property.

S 001762



C. **Law:**

1. To liability imposed on the **insured** by the Employees Retirement Income Security Act of 1974 (ERISA) and amendments thereto or similar provisions of any Federal, State or Local Statutory or Common Law with respect to an employee benefit plan; or

2. To liability imposed on the **insured** under any worker's compensation, unemployment compensation, or disability benefits law or similar law; or

3. To liability imposed on the **insured** under an automobile no-fault law, uninsured motorists law, underinsured motorists law or first party **personal injury** or **property damage** law.

D. **Nuclear Energy Liability:**

To nuclear energy exposures, per the nuclear energy exclusion endorsement attached to this policy.

E. **Pollution:**

1. To any liability, including defense, arising:

   a. Directly,

   b. Indirectly, or

   c. In concurrence, or in any sequence, with a cause for which coverage may be afforded by this policy, out of the actual, alleged or threatened existence, discharge, dispersal, seepage, migration, release or escape of pollutants.

2. To any loss, cost or expense arising out of any request, demand or order issued or made pursuant to any environmental protection or environmental liability statutes or regulations that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

It is the intent and effect of this provision to exclude any or all coverages afforded by this policy for any claim, action, judgment, liability, settlement, defense or expenses in any way arising out of a discharge, dispersal, release or escape of pollutants whether such results from the **insured's** activities or the activities of others and whether or not such is sudden, gradual, accidental, intended, foreseeable, expected, fortuitous, inevitable and wherever or however such occurs.

**S 001763**

F.   Workers' Compensation Agreement:

To injury or damage to an **insured** officer or employee or the spouse, child, parent, brother or sister of that employee in the event the **insured** has rejected its common law defenses under any Workers' Compensation or Occupational Disease Law by specific rejection of such laws or otherwise.

II.   Coverage A - Excess Liability

This policy does NOT apply:

A.   Primary Insurance Exclusions:

To injury or damage excluded by **primary insurance.**

III.   Coverage B- Umbrella

This policy does NOT apply:

A.   Aircraft:

To the ownership, maintenance, operation, use, entrustment to others, loading or unloading of any aircraft.

B.   Alcoholic Beverages:

To liability arising out of the manufacturing, distributing, serving or selling alcoholic beverages.

C.   Contractual Liability, Property:

To liability assumed by the **insured** under an **insured contract** for any injury to or destruction of property rented to, occupied by, used by or in the care, custody or control of the **insured,** but this exclusion shall not apply in any case where the **insured's** liability would have been covered by this policy even without an assumption of liability under contract.

D.   Fellow Employee:

To any officer or employee of an **insured** with respect to any **personal injury** to another officer or another employee of an **insured** injured in the course of employment.

S 001764



E.    Impaired Property:

To **property damage to impaired property** or property that has not been physically injured, arising out of:

1.    A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work;** or

2.    A delay or failure by **you** or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

F.    Personal Injury:

To **personal injury** arising out of:

1.    Oral or written publication of material, if done by or at the direction of the **insured** with knowledge of its falsity;

2.    Oral or written publication of material whose first publication took place before the beginning of this policy period;

3.    The willful violation of a penal statute or ordinance committed by or with the consent of **the insured;** or

4.    Advertising, publishing, broadcasting or telecasting done by or for the **insured** .

5.    Discrimination prohibited by law or related to employment or failure to employ any person.

G.    Property Damage:

To **property damage** to or loss of use of:

1.    Property owned by **you** or purchased by **you** under installment sales contract or property on consignment to **you;**

2.    **Your product** arising out of such product or any of its parts; or

3.    **Your work** arising out of the work or out of materials, parts or equipment furnished with such work.

S 001765



H.    Product Withdrawal:

To damages for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.    **Your product**, or

2.    **Your work**, or

3.    **Impaired property**,

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

I.    Property, Care, Custody or Control:

For damage to property, both real and personal, of others rented to, occupied by, used by or in the care, custody or control of the insured.

J.    Watercraft or Recreational Motor Vehicle:

To the ownership, maintenance, operation, entrustment, use, loading or unloading of any watercraft or recreational motor vehicle.

## Conditions

The titles of the varied paragraphs of the Conditions section of this policy are inserted solely for convenience and reference and are NOT to be deemed in any way to limit or affect the provisions to which they relate.

A.    Appeals:

In the event any **primary insurer** elects not to appeal a judgment in excess of the amount of the **primary insurance** or other insurance, we may elect to appeal. However, in no event shall **our** liability exceed the amount specified in the Declarations and in Section III - Limits of Liability.

B.    Arbitration:

We shall not be liable under this policy for damages awarded in arbitration except (1) an arbitration proceeding wherein an indemnitee under a written **insured contract** or agreement seeks damages against the insured on account of the **insured contract** and wherein we are entitled to exercise the **insured's** rights in the choice of arbitrators and in the conduct of such arbitration proceedings or (2) an arbitration proceeding in which **we** have given written consent.

S 001766



**C.**   **Assignment:**

Assignment of interest under this policy shall not bind us until our consent is endorsed hereon; if, however, **you** die, or are adjudged bankrupt or insolvent within **our** policy period, this policy, unless cancelled, shall cover **your** legal representative for the unexpired portion of such period. Notice of cancellation addressed to the first **named insured** and mailed to the address shown in the Declarations shall be sufficient notice to effect cancellation of the policy.

**D.**   **Assistance and Cooperation of the Insured:**

The **insured** shall cooperate with **us** in the investigation, settlement or defense of any claim and take all necessary steps to protect the **insured's** and our interests. Upon **our** request, the **insured** shall attend hearings and trials and assist in effecting settlements, in securing and giving evidence and; if **we** request, in the conduct of legal proceedings.

The **insured** shall cooperate with the **primary insurers** as required by the terms of their policies and comply with all terms and conditions thereof. The **insured** shall enforce any right of contribution or indemnity against any person or organization who may be liable to the **insured** because of liability with respect to which insurance is afforded under both this policy and the **primary insurance** or **other insurance** .

The **insured** shall not at any time make or authorize an admission of liability or attempt to settle or otherwise dispose of any claim without **our** written consent.

In the event any **primary insurer** denies coverage for any reason whatsoever, written notice shall immediately be given by or on behalf of the **insured** to **us**. Such notice shall contain the reason for such denial as stated by the **primary insurer**. As a condition precedent to making a claim under this policy, the **insured**, upon **our** request, shall initiate legal proceedings against said **primary insurer** to determine by final judgment the legality of its position. If such legal proceedings are unsuccessful, expenses incurred by the **insured** at **our** request shall be paid by **us**.

If the denial of coverage by the **primary insurer** is legally upheld because of a breach of a policy condition by the **insured**, and if said breach is not also a breach of a condition of this policy, the insurance afforded by this policy shall apply in the same manner as though such **primary insurer's** policy had not been breached and had remained in full force and effect.

**E.**   **Bankruptcy of the Insured:**

Bankruptcy or insolvency of an **insured** or that of an **insured's** estate will not relieve **us** of **our** obligations under this policy.

S 001767



F.  **Bankruptcy of the Primary Insurer:**

In the event of the bankruptcy or insolvency of any primary insurer, the insurance provided by this policy shall not replace such primary insurance, but shall apply in the same manner as though such primary insurance was available and collectible.

G.  **Cancellation:**

1.  The first named insured shown in the Declarations may cancel this policy by mailing or delivering to us, or any of our authorized agents, this policy or written notice stating when thereafter the cancellation shall be effective.

2.  We may cancel this policy by mailing or delivering to the first named insured at the address shown in the Declarations written notice of cancellation at least:

    a.  Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b.  Thirty (30) days before the effective date of cancellation if we cancel for other reason.

3.  If this policy is cancelled, we will send the first named insured any premium refund due. If you initiate cancellation of this policy, the earned premium shall be computed in accordance with the customary short rate table and procedure. If we cancel this policy, the earned premium shall be computed on a pro rata basis. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable thereafter. However, refund of unearned premium is not a condition of cancellation.

4.  The mailing of notice as aforesaid shall be sufficient proof of notice, and the effective date of cancellation stated in the notice shall become the end of our policy period.

H.  **Changes:**

This policy contains all the agreements between you and us concerning the insurance afforded. The first named insured shown in the Declarations is authorized to act on behalf of all insureds to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by written endorsement issued by us and made a part of this policy.

I.  **Conformity with Statute:**

Any terms of this policy which are in conflict with the statutes of the state shown in the Declarations as the address of the named insured, are hereby amended to conform to such statutes.

J.      Inspection and Audit:

We have the right but NOT the obligation or duty to:

1.      Make inspections and surveys of the insured premises and operations at any time;

2.      Give you reports on the conditions we find; and

3.      Recommend changes.

Any inspections, surveys, reports or recommendations shall relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions are safe or healthful; or comply with applicable laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

We may examine and audit your books and records as they relate to this policy at any time during our policy period and up to three years thereafter.

K.      Maintenance of Primary Insurance:

1.      You agree to maintain all primary insurance, as described in the Schedule of Primary Insurance, in full force and effect during our policy period, except for reduction of aggregate limits due to payment of claims. If such primary insurance is not maintained in full force and effect, or if any limits of insurance of a primary policy are less than those stated in the Schedule of Primary Insurance, or if there is any material change in the coverage under any primary insurance, the insurance afforded by this policy shall apply in the same manner as though such primary policies and limits of insurance had been in effect, so maintained and unchanged.

2.      You agree to notify us promptly if any primary insurance is cancelled or terminated.

L.      Named Insured's Representations:

By accepting this policy, you agree that:

1.      The information shown on the Declarations Page is accurate and complete;

2.      The information is based upon representations you made to us in your application(s) for this policy;

3.      We have issued this policy in reliance upon your representations; and

4.  This policy is void in any case of fraud by you relating to it. It is also void if you intentionally conceal or misrepresent any material facts concerning this policy in your application for this policy or otherwise .

M.  Notice of Occurrence, Claim, Insured's Duty:

1.  The **insured** must see to it that **we** are notified promptly in writing of an **occurrence** which may result in a **claim** under this policy. Notice should include:

    a.  How, when and where the **occurrence** took place;

    b.  The names and addresses of any injured persons and witnesses; and

    c.  All information available to identify this policy, including the name of the **insured.**

Notice of an **occurrence** is NOT notice of a **claim** under parts of this policy providing coverage on a claims made basis.

2.  If a **claim** is made against any **insured**, the **insured** must see to it that **we** receive prompt written notice of the **claim.**

3.  The **insured** or its representative must:

    a.  Immediately send **us** copies of any demands, notices, summonses or legal papers received in connection with the **claim**; and

    b.  Authorize **us** to obtain records and other information.

N.  Other Insurance:

If there is any (1) **other insurance**, or (2) insurance available to the **insured** on an extended reporting period basis under either a **primary policy** or **other insurance**, or (3) insurance available to the **insured** on a retroactive basis under either a **primary policy** or **other insurance,** this policy shall apply as excess of and not contributory with such insurance.

O.  Payment of Loss, Action Against Company:

**We** shall be liable for payment under Coverage A. of this policy only after (1) the **insured** and the **primary insurers** have paid or become obligated to pay the applicable amount or amounts of such insurance, (2) the **insured** and the **primary insurers** have fulfilled or agreed to fulfill their obligation to defend and pay expenses, and (3) final judgment has been rendered against the **insured** after actual trial or a written settlement has been reached by the **insured**, the claimant, the **primary insurers**, and **us.**



Any claim against us by the insured under this policy shall be made within twelve (12) months after the insured pays or becomes obligated to pay an amount of damages in excess of the amount of primary insurance or other insurance.

With respect to all claims under Coverage B., we shall be liable for payment under this policy only after the insured shall have fully complied with all the terms of this policy and the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written settlement of the insured, the claimant and us. Any person or organization or the legal representative thereof who has secured such judgment or written settlement shall be entitled to recover under this policy to the extent of the insurance afforded by this policy.

If any subsequent payments are made or required to be made by the insured on account of the same event causing injury or damage, additional claims may be similarly made from time to time and shall be similarly subject to the provisions of this condition.

Nothing contained in this policy shall give any person or organization any right to join us as a co-defendant in any action against any insured to determine that insured's liability.

P.  Payment to Insured:

If we are prohibited by law from paying for damages "on behalf of" the insured, we will reimburse the insured for damages which the insured pays, if we are not also prohibited by law from so paying.

Q.  Premium:

The premium for this policy shall be computed on the basis stated in the Declarations. If the deposit premium stated in the Declarations is specified under "Premium Computation" as "Adjustable" it is an estimated premium only. The earned premium shall be computed upon termination of this policy. If the earned premium is more than the deposit premium paid, the first named insured shall pay the excess to us; if less, we shall return to the first named insured the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve (12) months of our policy period, and subject further to any policy minimum premium. The policy minimum premium is a minimum amount of premium earned under this policy in the event you cancel this policy.

R.  Separation of Insureds:

Except with respect to the limits of liability and any rights or duties specifically assigned to the first named insured, this insurance applies:

1.  As if each named insured were the only named insured; and

2.  Separately to each insured against whom claim is made.



S.   Subrogation:

In the event of any payment under this policy, the **insured** must notify us of all the **insured's** rights of recovery against any person or organization. We shall be subrogated to all such rights and the **insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **insured** shall do nothing after loss to prejudice such rights.

Any amount recovered through subrogation or otherwise shall be apportioned in the inverse order of payment of the **claim** or **claims** involved to the extent of actual payment thereof by all interests. The expenses of all such recoveries and proceedings in connection therewith shall be apportioned in the ratio of respective recoveries. With respect to proceedings conducted solely by **us**, if there is no recovery, we shall bear the expense thereof. If there is a recovery, we shall be reimbursed in full from such recovery for the amount of all expenses incurred by **us** before apportionment of such recovery as herein provided.

T.   Unimpaired Aggregate:

The **primary insurance** aggregate limits of liability, as shown in the Schedule of Primary Insurance, shall be unimpaired at the effective date of this policy and, for the purpose of insurance provided by this policy, only **occurrences** taking place during the term of this policy shall be considered in determining the extent of any exhaustion of the **primary insurance** aggregate limits.

U.   Workers' Compensation Agreement:

With respect to injury or death of any officer or employee of the **insured** or the spouse, child, parent, brother or sister of an employee of the **insured**, which arises out of and in the course of employment by the **insured**, it is a condition to the recovery of any loss under this policy, and the **insured** represents and agrees, that it has not rejected and will not reject its common-law defenses under any Workers' Compensation or Occupational Disease Law by rejection of such law or otherwise.

## Definitions

As used in the policy, the following words or phrases mean:

A.   **Automobile**

A land motor vehicle, including motorcycles, trailers or semi-trailers designed for use on public roads, including any machinery or apparatus attached thereto, but **automobile** does not include **mobile equipment**.

B.    **Business**

Any trade, business or profession including farming or ranching.

C.    **Claim**

Any demand upon the **insured** for damages or services, including service of suit papers or arbitration proceedings against the **insured** for damages or services, alleging liability of the **insured** as a result of an occurrence to which this policy applies. A **claim** does NOT include reports of accidents, or occurrences, or any acts or omissions which may give rise to a **claim**.

D.    **Claims Made**

Under Coverage A., a **claim** for injury or damage to which this policy applies, but only if the **claim** for injury or damage is first made against the **insured** during **our** policy period or the extended reporting period and the injury or damage occurs on or after the retroactive date shown in the Declarations and prior to the termination of this policy.

A **claim** will be deemed to have been made when notice of such **claim** is received in writing by the **insured** or by **us**, whichever comes first.

E.    **Impaired Property**

Tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

1.    It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.    **You** failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a.    The repair, replacement, adjustment, or removal of **your product** or **your work,** or

b.    **Your** fulfilling the terms of the contract or agreement.

F.    **Insured**

Under Coverage A:

1.    The **named insured;**

2.    Persons or organizations included as insureds in primary policies other than additional insureds;

S 001773

3. Persons or organizations, included as additional insureds in **primary policies,** provided that this policy applies only to liability for or on behalf of the named insured.

Under Coverage B:

1. The named insured;

2. If a named insured is designated in the Declarations as an individual, the individual so designated and spouse, but only with respect to the conduct of a business of which you are a sole owner.

3. Any partner, executive officer, employee, director or stockholder of the named insured while acting within the scope of their duties as such;

4 Any wholly-owned subsidiary of the named insured other than one which you newly acquire or form,

Any organization you newly acquire or form, other than a partnership or joint venture; provided that this policy:

a. Applies only to such organizations over which you maintain majority ownership or majority interest, and to which more specific insurance does not apply;

b. Applies only until the ninetieth (90th) day after you acquire or form the organization or until the end of our policy period, whichever is earlier, unless within that time:

I) You request us to include such organization as a named insured, and

ii) We agree to do so;

c. Does not apply to injury or damage that took place before you acquired or formed the organization.

5. Any organization acting as a real estate manager for the named insured;

6. Any person or organization for whose benefit the named insured has, prior to the time of the occurrence, agreed in writing to obtain insurance such is afforded by this policy, but only with respect to the liability of such person or organization arising out of their operations by or on behalf of the named insured or premises owned or used by the named insured;

7. If the named insured is designated in the Declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to their liability as such.

This policy does not apply to injury or damage arising out of the conduct of any current, past, or newly acquired or formed partnership or joint venture, that is not stated in the Declarations of this policy as a named insured.

G. **Insured Contract**

Any written or oral agreement entered into by the **insured**, in the usual course of the **business** operations of the **insured**, in which the **insured** assumes tort liability of another to pay damages because of **personal injury** or **property damage** to a third person or organization where the contract or agreement is made prior to the injury or damage .

Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An **insured contract** does NOT include that part of any contract or agreement that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

1. Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

2. Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

H. **Mobile Equipment**

**Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a. Power cranes, shovels, loaders, diggers or drills; or

    b. Road construction or resurfacing equipment such as graders, scrapers or rollers;



5. Vehicles not described in 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types.

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not mobile equipment but will be considered automobiles:

   a. Equipment designed primarily for:

      i. Snow removal;

      ii. Road maintenance, but not construction or resurfacing;

      iii. Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

I. Named Insured

The named insured stated in the Declarations of this policy.

J. Occurrence

An accident, including continuous or repeated exposure to substantially the same harmful conditions, which results during the policy period in personal injury or property damage; provided, however, with regard to the specific types of personal injury described in subsection (3) of the definition of personal injury, occurrence shall mean an offense.

K. Other Insurance

Insurance, other than primary insurance or insurance which is specifically purchased by the named insured to be in excess of the insurance afforded by this policy, which is available to the insured and affords coverage with respect to injury or damage to which this policy applies.

S 001776



L. **Personal Injury**

1. Bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

2. Physical or mental disability and mental anguish when arising out of bodily injury.

3. The following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. Wrongful entry into or eviction of a person from a room, dwelling or premises that the person occupies;

   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   e. Oral or written publication of material that violates a person's right of privacy.

M. **Primary Insurer**

The insurer of the **primary insurance** or other **insurance** policies.

N. **Primary Policy, Primary Policies and/or Primary Insurance**

The policy or policies of insurance as described in the Schedule of Primary Insurance forming a part of the Declarations of this policy.

O. **Products - Completed Operations Hazard**

1. **Personal Injury** and **property damage** occurring away from premises **you** own or rent and arising out of **your product** or **your work** except:

   a. Products that are still in **your** physical possession; or

   b. Work that has not yet been completed or abandoned.

2. **Your work** will be deemed completed at the earliest of the following times:

   a. When all of the work called for in **your** contract has been completed;

   b. When all of the work to be done at the site has been completed, provided **your** contract calls for work at more than one site;



c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed .

P. Property Damage

1. Physical injury to tangible property, including all resulting loss of use of that property; or

2. Loss of use of tangible property that has not been physically injured provided that such loss of use is caused by an occurrence.

Q. Recreational Motor Vehicle

A golf cart or snowmobile or if not subject to motor vehicle registration, any other land motor vehicle designed for recreational use off public roads.

R. Retained Limit

Under Coverage B., the amount as stated in the declarations of this policy, the insured shall keep, in the absence of primary insurance, as uninsured with respect to each occurrence.

S. Your Product

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

a. You;

b. Others trading under your name; or

c. A person or organization whose business or assets you have acquired; and

2. Containers (other than vehicles), materials, parts or equipment furnished in connection with the goods or products included in 1. above.

Your product includes warranties or representations made at any time with respect to fitness, quality, durability or performance of any of the items included in 1. or 2. above.

Your product does not include vending machines or any other property rented to or located for the use of others but not sold.

T.    **Your Work**

1.    Work or operations performed by you or on your behalf; and

2.    Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes warranties or representations made at any time with respect to the fitness, quality, durability, or performance of any of the items included in 1. or 2. above.

**IN WITNESS WHEREOF,** the Company has caused this policy to be signed by its President and Secretary, but the same shall not be binding upon the Company unless it has been countersigned on the Declarations page by a duly authorized representative of the Company.

_Jerry L Woolard_
President

_Diane E. Thomas_
Secretary

# *W*ESTPORT INSURANCE CORPORATION

**ENDORSEMENT**

### This Endorsement Changes the Policy - Please Read it Carefully

Directors & Officers Liability Exclusion

This endorsement applies to coverage A and B - Excess Liability and Umbrella Liability.

It is hereby agreed that this policy shall not apply to liability for any wrongful act committed or alleged to have been committed by any person or organization in their capacity as a director and/or officer of the insured.

Wrongful act means any breach of duty, neglect, error, misstatement, misleading statement, omission or any other acts incidental thereto.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein. (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

**Endorsement Effective**                          **Policy No.**                          **Endorsement No.**
**Named Insured**

Countersigned.                          ***WESTPORT INSURANCE CORPORATION***

..................................................                     _Jerry L Woolard_        _Diane E. Thomas_
Authorized Representative                              President                    Secretary

Endorsement Serial No.   EUE-118(1/95)



# WESTPORT INSURANCE CORPORATION

ENDORSEMENT

## This Endorsement Changes the Policy - Please Read it Carefully

### Discrimination in Employment Exclusion

This endorsement applies to coverage A and B - Excess Liability and Umbrella Liability.

It is hereby agreed that this policy shall not apply to **personal injury** arising out of discrimination with respect to the employment or failure to employ any person.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein. (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

**Endorsement Effective**          **Policy No.**          **Endorsement No.**
**Named Insured**

Countersigned.                     *WESTPORT INSURANCE CORPORATION*

.......................................
Authorized Representative          Jerry L. Woodard         Diane E. Thomas
                                        President                    Secretary

Endorsement Serial No.  EUE-119(1/95)

S 001781                                    (31)

# *W*ESTPORT INSURANCE CORPORATION

**ENDORSEMENT**

### This Endorsement Changes the Policy - Please Read it Carefully

Employers Liability Exclusion

This endorsement applies to coverage A and B - Excess Liability and Umbrella Liability.

It is hereby agreed that this policy shall not apply to liability for **personal injury** sustained by any employee of the **insured** and arising out of and in the course of the employees' employment by the **insured.**

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein. (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

**Endorsement Effective**                          **Policy No.**                          **Endorsement No.**
**Named Insured**

Countersigned                                        **WESTPORT INSURANCE CORPORATION**

.....................................................
Authorized Representative                          ~~Jerry L Woolard~~      ~~Diane E. Hanes~~
                                                     President          Secretary

Endorsement Serial No.   EUE-124(1/95)

S 001782                                            (3½)

# *W*ESTPORT INSURANCE CORPORATION

ENDORSEMENT

### This Endorsement Changes the Policy - Please Read it Carefully

Employment Termination Exclusion

This endorsement applies to coverage A and B - Excess Liability and Umbrella Liability.

It is hereby agreed that this policy will not apply to **personal injury or property damage** arising in whole or in part from termination from employment, sexual harassment or discrimination in employment.

**We will have no duty to defend any claim**, demand or suit based in whole or in part from employment nor will we indemnify the **Insured** for any award or judgement or settlement made.

Accepled by:

Name: _____

Title: _____

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein. (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

| **Endorsement Effective**<br>**Named Insured** | **Policy No.** | **Endorsement No.** |
|---|---|---|

Countersigned.

*WESTPORT INSURANCE CORPORATION*

.............................................
Authorized Representative

~~Jury L Woolard~~ President   ~~Diane E. Thomas~~ Secretary

Endorsement Serial No. EUE-125IL(6/95)

S 001783

(33)

# WESTPORT INSURANCE CORPORATION

## ENDORSEMENT

### This Endorsement Changes the Policy - Please Read it Carefully

Physical - Sexual Abuse Exclusion

This endorsement applies to coverage A and B - Excess Liability and Umbrella Liability.

It is hereby agreed that this policy shall not apply to any liability, claim, demand and causes of action arising out of or resulting from either physical abuse, sexual abuse or licentious, immoral or sexual behavior intended to lead to, or culminating in any sexual act, whether caused by, or at the instigation of, or at the direction of, or omission by, the insured, his employees, patrons or any cause whatsoever. However, not withstanding the foregoing, the insured shall be protected under the terms of this policy as to any claim and/or allegation which may be covered by the policy upon which suit may be brought against him, for any such alleged behavior and insured unless a judgment or a final adjudication adverse to the insured shall establish that such behavior occurred as an essential element of the cause of action so adjudicated.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein. (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

**Endorsement Effective**          Policy No.                     Endorsement No.
**Named Insured**

Countersigned.                    *WESTPORT INSURANCE CORPORATION*

.................................................          _Juny L Wiolard_      _Dain E. Lenas_
      Authorized Representative                     President             Secretary

Endorsement Serial No.  EUE 148IL(6/95)

S 001784                    

# WESTPORT INSURANCE CORPORATION

ENDORSEMENT

**This Endorsement Changes the Policy - Please Read It Carefully**

Punitive Damages Exclusion

This endorsement applies to coverage A and B - Excess Liability and Umbrella Liability.

It is hereby agreed that this policy shall not apply to any punitive damages, exemplary damages, treble damages or the defense thereof.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein. (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

| Endorsement Effective<br>Named Insured | Policy No. | Endorsement No. |
| --- | --- | --- |

Countersigned

**WESTPORT INSURANCE CORPORATION**

............................................................
Authorized Representative

~~Jerry L Woodard~~ President    ~~Diane E. Thomas~~ Secretary

Endorsement Serial No.   EUE-150(1/95)

S 001785                                                    35

# WESTPORT INSURANCE CORPORATION

### ENDORSEMENT

## This Endorsement Changes the Policy - Please Read it Carefully

### Real and Personal Property - Care, Custody and Control Exclusion

This endorsement applies to coverage A and B - Excess Liability and Umbrella Liability.

It is hereby agreed that this policy shall not apply to liability for property damage to real or personal property:

1. Owned or occupied by or rented to the insured,

2. Used by the insured,

3. In the care, custody, or control of the insured or to which the insured is for any purpose exercising physical control.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein. (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

| Endorsement Effective<br>Named Insured | Policy No. | Endorsement No. |
| --- | --- | --- |

Countersigned.                                     **WESTPORT INSURANCE CORPORATION**

.............................................................          _Jerry L Woolard_                _Diane E. Thomas_
Authorized Representative                          President                      Secretary

Endorsement Serial No.  EUE-156(1/95)

S 001786

(36)

# WESTPORT INSURANCE CORPORATION

**ENDORSEMENT**

### This Endorsement Changes the Policy - Please Read it Carefully

Watercraft Liability Exclusion

This endorsement applies to coverage A and B - Excess Liability and Umbrella Liability.

It is hereby agreed that this policy shall not apply to liability arising out of the ownership, maintenance, operation use, entrustment to others, loading or unloading of any watercraft.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein. (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

**Endorsement Effective**
**Named Insured**                    **Policy No.**                    **Endorsement No.**

Countersigned.                       **WESTPORT INSURANCE CORPORATION**

.......................................
Authorized Representative            _Jerry L. Woodard_      _Diane E. Thomas_
                                          President                Secretary

Endorsement Serial No.  EUE-168(1/95)

S 001787                             (37)

# *W*ESTPORT INSURANCE CORPORATION

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### This Endorsement Changes The Policy - Please Read It Carefully

This endorsement applies to coverage A and B - Excess Liability and Umbrella Liability

I.    The insurance does not apply:

   A.    Under any Liability Coverage, to PERSONAL INJURY or PROPERTY DAMAGE:

   1.    With respect to which an INSURED under the policy is also an INSURED under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an INSURED under any such policy but for its termination upon exhaustion of its limit of liability; or

   2.    Resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the INSURED is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B.    Under any Medical Payments coverage, to expenses incurred with respect to PERSONAL INJURY resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

   C.    Under any Liability Coverage, to PERSONAL INJURY or PROPERTY DAMAGE resulting from the hazardous properties of nuclear material, if:

   1.    The nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an INSURED or (b) has been discharged or dispersed therefrom;

   2.    The nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an INSURED; or

   3.    The PERSONAL INJURY or PROPERTY DAMAGE arises out of the furnishing by an INSURED of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, the exclusion (3) applies only to PROPERTY DAMAGE to such nuclear facility and any property thereat.

(page 1 of 2 pages)

Endorsement Serial No. EUE-170(1/95)



II.     As used in this endorsement:

(a) "Hazardous properties" include radioactive, toxic or explosive properties;
(b) "Nuclear material" means source material, special nuclear material or by-product material;
(c) "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;
(d) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;
(e) "Waste" means any waste material (a) containing by-product material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (b) resulting from the operation by any person or organization of any nuclear facility included under the first two paragraphs of the definition of nuclear facility.

"Nuclear facility" means:

(a) Any nuclear reactor;
(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste;
(c) Any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the INSURED at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 of any combination thereof, or more than 250 grams of uranium 235;
(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

(a) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
(b) "Property damage" includes all forms of radioactive contamination of property.

(page 2 of 2 pages)

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein. (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

**Endorsement Effective**
**Named Insured**                          Policy No.                          **Endorsement No.**


Countersigned,                          *WESTPORT INSURANCE CORPORATION*

.......................................................
Authorized Representative                    President                    Secretary

Endorsement Serial No.  EUE-170(1/95)

S 001789

# WESTPORT INSURANCE CORPORATION

## ILLINOIS AMENDATORY ENDORSEMENT

### This Endorsement Changes the Policy - Please Read It Carefully

This endorsement applies to coverage A & B - Excess Liability and Umbrella Liability.

IT IS HEREBY AGREED that the corresponding sections of this policy are amended to eliminate any inconsistencies between them and the following provisions:

A.  Subparagraph 3 of paragraph A. Coverage A - Excess Liability under Section I. Coverage is deleted and the following paragraph is substituted:

3.  The extended reporting period will reinstate 100% of this policy    aggregate limit for the length of the extended reporting period, but    will not extend our policy period.

B.  Paragraph O. of the Conditions Section of the policy is deleted and the following paragraph is substituted:

O.   Payment of Loss, Action Against Company:

We will be liable for payment under Coverage A. of this policy only after (1) the insured and the primary insurers have paid or become obligated to pay the applicable amount or amounts of such insurance, (2) the insured and the primary insurers have fulfilled or agreed to fulfill their obligation to defend and pay expenses, and (3) final judgment has been rendered against the insured after actual trial or a written settlement has been reached by the insured, the claimant, the primary insurers, and us.

With respect to all claims under Coverage B., we will be liable for payment under this policy only after the insured has fully complied with all the terms of this policy and the amount of the insured's obligation to pay has been finally determined either by judgment against the insured after actual trial or by written settlement of the insured, the claimant and us. Any person or organization or their legal representative who has secured such judgment or written settlement will be entitled to recover under this policy to the extent of the insurance afforded by this policy.

If any subsequent payments are made or required to be made by the insured on account of the same event causing injury or damage, additional claims may be similarly made from time to time and will be similarly subject to the provisions of this condition.

(page 1 of 2 pages)

Endorsement Serial No.  EUE-172IL(7/95)

S 001790



# WESTPORT INSURANCE CORPORATION

ENDORSEMENT

### This Endorsement Changes the Policy - Please Read it Carefully

Medical Professional Exclusion
(Employees)

This endorsement applies to coverage A and B - Excess Liability and Umbrella Liability.

It is hereby agreed that this policy shall not apply to liability of any employee of the named insured while acting in their capacity as a physician, surgeon, dentist, nurse anesthetist or anesthesiologists with respect to bodily injury, sickness, disease or destruction arising out of the rendering or failure to render professional services by or on behalf of the named insured.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein. (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

**Endorsement Effective**
**Named Insured**                        **Policy No.**
                                                                **Endorsement No.**

Countersigned.                          *WESTPORT INSURANCE CORPORATION*

.......................................                  _Jerry L Wrocock_          _Diane E. Thomas_
**Authorized Representative**                President                        Secretary

Endorsement Serial No. EUE-196(06/96)

S 001791                        41

# WESTPORT INSURANCE CORPORATION

## ENDORSEMENT

### This Endorsement Changes the Policy - Please Read It Carefully

Contractual Exclusion

This endorsement applies to coverage B - Umbrella Liability.

It is hereby agreed that this policy shall not apply to liability assumed by the insured under any written or oral agreement.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein. (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

**Endorsement Effective**
**Named Insured**                    **Policy No.**                    **Endorsement No.**

Countersigned.                    *WESTPORT INSURANCE CORPORATION*

........................................
Authorized Representative          President          Secretary

Endorsement Serial No.   EUF-109(1/95)

S 001792



**WESTPORT INSURANCE CORPORATION**

**ENDORSEMENT**

### This Endorsement Changes the Policy - Please Read it Carefully

Personal Injury Exclusion

This endorsement applies to coverage B - Umbrella Liability.

It is hereby agreed that this policy shall not apply to liability caused by the following offenses:

a) False arrest, detention or imprisonment;

b) Malicious prosecution;

c) Wrongful entry into or eviction of a person from a room, dwelling or premises that the person occupies;

d) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e) Oral or written publication of material that violates a person's right of privacy.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein. (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

| Endorsement Effective Named Insured | Policy No. | Endorsement No. |
|---|---|---|

Countersigned.

*WESTPORT INSURANCE CORPORATION*

.............................................................
Authorized Representative

*Jerry L. Woolard* President    *Diane C. Thomas* Secretary

Endorsement Serial No. EUF-133(03/96)

S 001793    (43)

# WESTPORT INSURANCE CORPORATION

## ILLINOIS AMENDATORY ENDORSEMENT

### This Endorsement Changes the Policy - Please Read it Carefully

### Pollution - Hostile Fire

### This endorsement applies to coverage A - Excess Liability.

It is hereby agreed that exclusion E. Pollution does not apply to liability for injury or damage arising out of heat, smoke, or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

This endorsement applies only:

a.  At or from any premises, site or location which is or was at any time owned or occupied by, or rented to, any insured;

b.  At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

   (i)  if the pollutants are brought on or to such premises, site or location in connection with such operations; or

   (ii)  if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein. (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

**Endorsement Effective**                          **Policy No.**                          **Endorsement No.**
**Named Insured**

Countersigned.                          *WESTPORT INSURANCE CORPORATION*

................................................                          _Jerry L. Woodard_                          _Diane E. Thomas_
**Authorized Representative**                          President                          Secretary

Endorsement Serial No.   EUF-148IL(7/95)

**S 001794**                          14

# WESTPORT INSURANCE CORPORATION

**ENDORSEMENT**

### This Endorsement Changes the Policy - Please Read it Carefully

Medical Professional Exclusion
(Services)

## This endorsement applies to coverage B - Umbrella Liability.

It is hereby agreed that this policy shall not apply to liability arising out of:

1. The rendering or failure to render medical, surgical, dental or nursing treatment including the furnishing of food or beverages in connection therewith.

2. The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

3. The handling of or performing post-mortem examinations on human bodies.

4. The service by any person as a member of a formal accreditation or similar professional board or committee of the named insured, or as a person charged with the duty of executing directives of any such board or committee.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein. (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

| **Endorsement Effective** | **Policy No.** | |
| Named Insured | | **Endorsement No.** |

Countersigned.                                   *WESTPORT INSURANCE CORPORATION*

..............................................
Authorized Representative                    _Jerry L Woodard_ — _Diane C. Thomas_
                                                          President                    Secretary

Endorsement Serial No. EUF-155(06/96)

S 001795                              45

# *WESTPORT INSURANCE CORPORATION*

## ILLINOIS AMENDATORY ENDORSEMENT

IT IS AGREED that this policy is hereby amended to the extent necessary to eliminate any inconsistencies between it and the following provisions:

Cancellation and Nonrenewal.

1.  The first named insured shown in the Declarations may cancel this policy by mailing to us, or any of our authorized agents, this policy or written notice stating when thereafter the cancellation shall be effective.

2.  During the first 60 days of coverage, we may cancel this policy by mailing to the first named insured at the address shown in the Declarations written notice of cancellation at least:

    a)  Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b)  Thirty (30) days before the effective date of cancellation if we cancel for other reasons.

3.  After coverage has been effective for 61 days or more, we may cancel this policy by mailing to the first **named insured**, at the last address known to us, written notice of cancellation at least:

    a)  Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b)  Sixty (60) days before the effective date of cancellation if we cancel for other reasons.

4.  All such notices shall include a specific explanation of the reason(s) for cancellation. After coverage has been effective for 60 days, it may be cancelled for one of the following reasons:

    a)  Nonpayment of premium;
    b)  Material misrepresentation in obtaining this policy;
    c)  **Your** violation of any of the terms and conditions of this policy;
    d)  Measurable increase in the risk originally accepted;
    e)  Certification to the Director of the loss of reinsurance which provided coverage for all or a substantial part of the underlying risk insured; or
    f)  A determination by the Director that the continuation of the policy could place us in violation of the insurance laws of Illinois.

Page 1 of 2

Endorsement Serial No. WIC-IL(95)

S 001796

46

# WESTPORT INSURANCE CORPORATION

5. If this policy is cancelled, we will send the first named insured any premium refund due. If you initiate cancellation of this policy, the earned premium shall be computed in accordance with the customary short rate table and procedure. If we cancel this policy, the earned premium shall be computed on a pro rata basis. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable thereafter. However, refund of unearned premium is not a condition of cancellation.

6. The mailing of notice as aforesaid shall be sufficient proof of notice, and the effective date of cancellation stated in the notice shall become the end of our policy period.

7. We reserve the right to decline renewal of this policy but agree to notify the named insured in writing at least 60 days in advance of the expiration date of this policy of our intent not to renew the policy, including a specific explanation of the reason(s). A copy of such notice shall be sent to the first named insured's broker, if known, or the agent of record, at the last mailing address known to us.

Notice of nonrenewal shall not be required if we have manifested its willingness to renew directly to the named insured. This policy shall terminate on the effective date of any similar insurance you procure with respect to the same subject designated in both policies. Renewal of this policy does not constitute a waiver or estoppel with respect to grounds for cancellation which existed before the effective date of such renewal.

Page 2 of 2

All other terms and conditions of this policy remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

**Endorsement Effective**
**Named Insured**

**Policy No.**

**Endorsement No.**

**WESTPORT INSURANCE CORPORATION**

Countersigned.

.................................................
Authorized Representative

President

Secretary

Endorsement Serial No.  WIC-IL(95)

S 001797

47

## ILLINOIS
## NOTICE TO POLICYHOLDERS

This notice is to advise you that should any complaints arise regarding the enclosed insurance binder, policy or renewal, you may contact the following:

Illinois Department of Insurance
Consumer Division or
Public Services Section
Springfield, Illinois   62767

Westport Insurance Corporation
5200 Metcalf
P.O. Box 2979
Overland Park, Kansas   66201-1379
Telephone 800-241-3470

S 001798

# PLAINTIFF'S
# EXHIBIT C

File No. J133

Attorney #30034

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

KOREY SMITH, a Minor, by his Mother )
and next friend, NICOLE CONNER, and )
NICOLE CONNER, Individually, )
         )             03L 014237
           Plaintiffs )             CALENDAR C
         )             OTHER PERSONAL INJ
     vs. )     NO.
         )
ALBERTA PAYNE, McELDRIDGE )
ASKEW, Individually and as Agent of )
ALBERTA PAYNE, SHAY HEALTH )
CARE SERVICES, INC., an Illinois )
Corporation, and UNKNOWN AGENTS )
AND EMPLOYEES, )
         )
         Defendants )

## COMPLAINT AT LAW

### COUNT I

Now comes the Plaintiff, KOREY SMITH, a Minor, by his Mother and next friend,

NICOLE CONNER, by and through his attorneys, KARP AND ELLIS, and complaining of the

Defendant, ALBERTA PAYNE, states as follows:

     1. That at all relevant times, Defendant, ALBERTA PAYNE, was licensed by the State

of Illinois to provide nursing care for the Plaintiff, KOREY SMITH, a Minor, and other similarly

situated patients.

     2. That on or about March 27, 2003, Defendant, ALBERTA PAYNE, had custody and

control of the Plaintiff, KOREY SMITH, a Minor, at her residence, at or near 16354 South

Sawyer, Markham, Illinois, and he was lawfully on the premises at the request of the Defendant

as a paid health care provider.

     3. That at the aforementioned time and place, Defendant was, and remains, the

owner of the above named premises.

RECEIVED

MAR 1 1 2005

-1-


PLAINTIFF'S
EXHIBIT
C

4. That at the time of the injuries to Plaintiff, he was only two (2) years of age and was too young to exercise care and caution for his own safety.

5. That at the time of the occurrence, Defendant knew that McELDRIDGE ASKEW was also at the above described premises and had in his possession a lawnmower with the intent to mow her lawn.

6. That Defendant knew, or should have known, that Plaintiff would not appreciate the risk of the lawnmower in his vicinity.

7. That Defendant knew, or should have known, that the lawnmower would be likely to cause injury.

8. It was the duty of Defendant to exercise ordinary care or control in the operation of the lawnmower, or to supervise the safe operation of the lawnmower on her property so that it would not cause damage or injury to the Plaintiff.

9. Defendant, disregarding her duty, negligently allowed it to be operated on her premises in the close vicinity of the Plaintiff.

10. It was the duty of the Defendant, as a nurse and as a person entrusted with the care and custody of the Plaintiff, to exercise ordinary care and caution for Plaintiff's safety.

11. Defendant, disregarding her duty, negligently allowed Plaintiff to be in the vicinity of a running, operating lawnmower.

12. On or about March 27, 2003, Plaintiff was in the vicinity of the running lawnmower with its blade engaged, and was struck by the blade. As a direct result of the negligent conduct of the Defendant, Plaintiff's foot was cut off by the lawnmower blade and was severely and permanently injured and disabled in mind and body, and suffered bodily pain and mental

anguish, and will continue to suffer in the future. Plaintiff has an amputated foot as a result of the incident.

13. Defendant was guilty of one or more of the following wrongful, negligent, careless and unlawful acts or omissions:

(a)     Failed to provide proper care and supervision for the minor Plaintiff;

(b)     Negligently allowed a lawnmower to be operated in the close proximity of the minor Plaintiff;

(c)     Negligently failed to supervise the operation and control of the lawnmower on her premises;

(d)     Failed to warn Plaintiff of the operation and danger of the lawnmower on her premises;

(e)     Failed to keep her premises in a condition reasonably safe for the use of guests, and failed to use due and proper care to protect guests, and especially Plaintiff, from danger;

(f)     Was otherwise careless and negligent.

14.     That as a direct and proximate result of one or more of the foregoing negligent acts or omissions, the Plaintiff was:

(a)     Injured in the head, body and limbs, both externally and internally;

(b)     Injured and made sick, sore, lame and disordered, suffering extensive injuries to the body, internally and externally;

(c)     Injured and suffered bodily pain and injury and mental anguish and nervous shock from the day of the accident until now, and will continue to suffer in the future;

(d)     Injured and suffered disability and disfigurement resulting from said injuries;

(e)     Injured and suffered pain, physical as well as psychological, and will be reasonably certain to experience pain and suffering in the future as a result of said injuries;

(f)     Injured and has endured great nervous shock and will be reasonably certain to experience nervous and psychological effects in the future, all as a result of said injuries;

WHEREFORE, Plaintiff, KOREY SMITH, a Minor, by his Mother and next friend, NICOLE CONNER, prays for judgment against the Defendant, ALBERTA PAYNE, in an amount in excess of FIFTY THOUSAND ($50,000.00) DOLLARS, plus costs.

## COUNT II

Now comes the Plaintiff, KOREY SMITH, a Minor, by his Mother and next friend NICOLE CONNER, by and through his attorneys, KARP AND ELLIS, and complaining of the Defendant, ALBERTA PAYNE, states as follows:

1 - 11.  Plaintiff adopts and realleges Paragraphs 1 through 11 of Count I as Paragraphs 1 through 11 of Count II.

12.  That ALBERTA PAYNE, as the owner of the above described premises, authorized and requested that McELDRIDGE ASKEW, as her Agent and/or Servant to bring his lawnmower upon her premises for the purpose of mowing her lawn.

13.  That McELDRIDGE ASKEW, acting at ALBERTA PAYNE's behest and/or behalf, negligently and carelessly started, operated and ran his lawnmower for the purpose of mowing ALBERTA PAYNE's lawn for her benefit in the close proximity of the minor Plaintiff.

14.  On or about March 27, 2003, Plaintiff was in the vicinity of the running lawnmower with its blade engaged, and was struck by the blade.  As a direct result of the negligence of the Defendant, Plaintiff's foot was cut off by the lawnmower blade and was severely and permanently injured and disabled in mind and body, and suffered bodily pain and mental anguish, and will continue to suffer in the future.  Plaintiff has an amputated foot as a result of the incident.

15.   Defendant was guilty of one or more of the following wrongful, negligent, careless and unlawful acts or omissions:

(a)   Failed to provide proper care and supervision for the minor Plaintiff;

(b)   Negligently allowed a lawnmower to be operated in the close proximity of the minor Plaintiff;

(c)   Negligently failed to supervise the operation and control of the lawnmower on her premises;

(d)   Failed to warn Plaintiff of the operation and danger of the lawnmower on her premises;

(e)   Failed to keep her premises in a condition reasonably safe for the use of guests, and failed to use due and proper care to protect guests, and especially Plaintiff, from danger;

(f)   Was otherwise careless and negligent.

16.   That as a direct and proximate result of one or more of the foregoing negligent acts or omissions, the Plaintiff was:

(a)   Injured in the head, body and limbs, both externally and internally;

(b)   Injured and made sick, sore, lame and disordered, suffering extensive injuries to the body, internally and externally;

(c)   Injured and suffered bodily pain and injury and mental anguish and nervous shock from the day of the accident until now, and will continue to suffer in the future;

(d)   Injured and suffered disability and disfigurement resulting from said injuries;

(e)   Injured and suffered pain, physical as well as psychological, and will be reasonably certain to experience pain and suffering in the future as a result of said injuries;

(f)   Injured and has endured great nervous shock and will be reasonably certain to experience nervous and psychological effects in the future, all as a result of said injuries.

)

WHEREFORE, Plaintiff, KOREY SMITH, a Minor, by his Mother and next friend, NICOLE CONNER, prays for judgment against the Defendant, ALBERTA PAYNE, in an amount in excess of FIFTY THOUSAND ($50,000.00) DOLLARS, plus costs.

COUNT III

Now comes the Plaintiff, KOREY SMITH, a Minor, by his Mother and next friend, NICOLE CONNER, by and through his attorneys, KARP AND ELLIS, and complaining of the Defendant, ALBERTA PAYNE, states as follows:

1 - 8. Plaintiff adopts and realleges Paragraph 1 through 8 to Count I as Paragraphs 1 through 8 of Count III.

9. Defendant, recklessly disregarding her duty, wilfully and wantonly allowed it to be operated on her premises in the close vicinity of the Plaintiff.

10. It was the duty of the Defendant, as a nurse and as a person entrusted with the care and custody of the Plaintiff, to exercise ordinary care and caution for Plaintiff's safety.

11. Defendant, recklessly disregarding her duty, wilfully and wantonly allowed Plaintiff to be in the vicinity of a running, operating lawnmower.

12. On or about March 27, 2003, Plaintiff was in the vicinity of the running lawnmower with its blade engaged, and was struck by the blade. As a direct result of the wilful and wanton conduct of the Defendant, Plaintiff's foot was cut off by the lawnmower blade and was severely and permanently injured and disabled in mind and body, and suffered bodily pain and mental anguish, and will continue to suffer in the future. Plaintiff has an amputated foot as a result of the incident.

13. At the time and place above stated, Defendant, with conscious indifference to surrounding circumstances and conditions and conscious that her conduct would naturally and

probably result in injury to Plaintiff, wilfully and wantonly, and with a reckless disregard for the

safety of Plaintiff, was guilty of one or more of the following wrongful acts or omissions:

(a)  Wilfully and wantonly failed to provide proper care and supervision for the minor Plaintiff;

(b)  Wilfully and wantonly allowed a lawnmower to be operated in the close proximity of the minor Plaintiff;

(c)  Wilfully and wantonly failed to supervise the operation and control of the lawnmower on her premises;

(d)  Wilfully and wantonly failed to warn Plaintiff of the operation and danger of the lawnmower on her premises;

(e)  Wilfully and wantonly failed to keep her premises in a condition reasonably safe for the use of guests, and failed to use due and proper care to protect guests, and especially Plaintiff, from danger;

(f)  Was otherwise careless and reckless.

14.  That as a direct and proximate result of one or more of the foregoing wilful,

wanton and reckless acts or omissions, the Plaintiff was:

(a)  Injured in the head, body and limbs, both externally and internally;

(b)  Injured and made sick, sore, lame and disordered, suffering extensive injuries to the body, internally and externally;

(c)  Injured and suffered bodily pain and injury and mental anguish and nervous shock from the day of the accident until now, and will continue to suffer in the future;

(d)  Injured and suffered disability and disfigurement resulting from said injuries;

(e)  Injured and suffered pain, physical as well as psychological, and will be reasonably certain to experience pain and suffering in the future as a result of said injuries;

(f)  Injured and has endured great nervous shock and will be reasonably certain to experience nervous and psychological effects in the future, all as a result of said injuries.

WHEREFORE, Plaintiff, KOREY SMITH, a Minor, by his Mother and next friend,

NICOLE CONNER, prays for judgment against the Defendant, ALBERTA PAYNE, in an

amount in excess of FIFTY THOUSAND ($50,000.00) DOLLARS, plus costs.

## COUNT IV

Now comes the Plaintiff, KOREY SMITH, a Minor, by his Mother and next friend

NICOLE CONNER, by and through his attorneys, KARP AND ELLIS, and complaining of the

Defendant, McELDRIDGE ASKEW, states as follows:

1. That on or about March 27, 2003, Plaintiff, KOREY SMITH, a Minor, was lawfully

on the premises at or near 16354 South Sawyer, Markham, Illinois.

2. That at said time and place, the Defendant, McELDRIDGE ASKEW, owned,

maintained, operated, and a controlled a certain lawnmower at the aforesaid location with the

intention of mowing the lawn of the premises.

3. That at the time of the injuries to Plaintiff, he was only two (2) years of age and was

too young to exercise care and caution for his own safety.

4. That Defendant knew, or should have known, that Plaintiff would not appreciate the

risk of the lawnmower in his vicinity.

5. That Defendant knew, or should have known, that the lawnmower would be likely to

cause injury.

6. It was the duty of Defendant to exercise ordinary care or control in the operation of the

lawnmower, or to supervise the safe operation of the lawnmower so that it would not cause

damage or injury to the Plaintiff.

7. Defendant, disregarding his duty, negligently allowed it to be operated on the aforesaid

premises in close vicinity of the Plaintiff.

(c) Injured and suffered bodily pain and injury and mental anguish and nervous shock from the day of the accident until now, and will continue to suffer in the future;

(d) Injured and suffered disability and disfigurement resulting from said injuries;

(e) Injured and suffered pain, physical as well as psychological, and will be reasonably certain to experience pain and suffering in the future as a result of said injuries;

(f) Injured and has endured great nervous shock and will be reasonably certain to experience nervous and psychological effects in the future, all as a result of said injuries.

WHEREFORE, Plaintiff, KOREY SMITH, a Minor, by his Mother and next friend, NICOLE CONNER, prays for judgment against the Defendant, McELDRIDGE ASKEW, in an amount in excess of FIFTY THOUSAND ($50,000.00) DOLLARS, plus costs.

## COUNT V

Now comes the Plaintiff, KOREY SMITH, a Minor, by his Mother and next friend NICOLE CONNER, by and through his attorneys, KARP AND ELLIS, and complaining of the Defendant, McELDRIDGE ASKEW, states as follows:

1 - 6. Plaintiff adopts and realleges Paragraphs 1 through 6 of Count IV as Paragraphs 1 through 6 of Count V.

7. Defendant, disregarding his duty, wilfully, wantonly, and with reckless disregard for Plaintiff's safety allowed it to be operated on the aforesaid premises in close vicinity of the Plaintiff.

8. That Defendant had a duty to exercise ordinary care and caution for Plaintiff's safety.

9. Defendant, disregarding his duty, wilfully, wantonly, and with reckless disregard for Plaintiff's safety, allowed Plaintiff to be in the vicinity near a running, operating lawnmower.

10. On or about March 27, 2003, Plaintiff was in the vicinity of the running lawnmower with its blade engaged, and was struck by the blade. As a direct result of the wilful, wanton and reckless act of the Defendant, Plaintiff's foot was cut off by the lawnmower blade and was severely and permanently injured and disabled in mind and body, and suffered bodily pain and mental anguish, and will continue to suffer in the future. Plaintiff has an amputated foot as a result of the incident.

11. At the time and place above stated, Defendant, with conscious indifference to surrounding circumstances and conditions and conscious that his conduct would naturally and probably result in injury to Plaintiff, wilfully and wantonly, and with a reckless disregard for the safety of Plaintiff, was guilty of one or more of the following wrongful acts or omissions:

    (a)    Wilfully and wantonly failed to provide proper care and supervision for the minor Plaintiff;

    (b)    Wilfully and wantonly allowed a lawnmower to be operated in the close proximity of the minor Plaintiff;

    (c)    Wilfully and wantonly failed to supervise the operation and control of the lawnmower on the aforesaid premises;

    (d)    Wilfully and wantonly failed to warn Plaintiff of the operation and danger of the lawnmower on the aforesaid premises;

    (e)    Was otherwise careless and reckless.

12. That as a direct and proximate result of one or more of the foregoing wilfully and wantonly acts or omissions, the Plaintiff was:

    (a)    Injured in the head, body and limbs, both externally and internally;

    (b)    Injured and made sick, sore, lame and disordered, suffering extensive injuries to the body, internally and externally;

    (c)    Injured and suffered bodily pain and injury and mental anguish and nervous shock from the day of the accident until now, and will continue to suffer in the future;

(d)    Injured and suffered disability and disfigurement resulting from said injuries;

(e)    Injured and suffered pain, physical as well as psychological, and will be reasonably certain to experience pain and suffering in the future as a result of said injuries;

(f)    Injured and has endured great nervous shock and will be reasonably certain to experience nervous and psychological effects in the future, all as a result of said injuries.

WHEREFORE, Plaintiff, KOREY SMITH, a Minor, by his Mother and next friend, NICOLE CONNER, prays for judgment against the Defendant, McELDRIDGE ASKEW, in an amount in excess of FIFTY THOUSAND ($50,000.00) DOLLARS, plus costs.

## COUNT VI

Now comes the Plaintiff, KOREY SMITH, a Minor, by his Mother and next friend, NICOLE CONNER, by and through his attorneys, KARP AND ELLIS, and complaining of the Defendant, SHAY HEALTH CARE SERVICES, INC., an Illinois Corporation, states as follows:

1. On or about March 27, 2003, and thereafter, the Defendant, SHAY HEALTH CARE SERVICES, INC. (hereinafter "SHAY"), was an Illinois Corporation doing business as a Home Health Agency and Nurse Agency health care provider that engaged on its staff various nurses and other personnel, and has at all times herein provided home health care and skilled pediatric nursing care to the Plaintiff, KOREY SMITH, a Minor, at and in his home at 7447 South Rockwell, Chicago, Illinois.

2. At all times Defendant, SHAY, has held itself out to the public as a home health care and nursing agency with personnel skilled, experienced and trained in the nursing profession, and as possessing that degree of skill, diligence, ability and training in accordance with the standard of practice used by other similarly situated home health care and nursing agencies, and held itself

out as having nursing staff and employees possessing that degree of skill, diligence, ability and training in accordance with the applicable standards of nursing specialties.

3. That the Plaintiff, KOREY SMITH, a Minor, did present himself for care to the Defendant, SHAY, and entrusted himself entirely to the care of the Defendant and its duly authorized or apparent agents, servants and/or employees, including its nursing staff and/or the Defendant, ALBERTA PAYNE.

4. That the nurses and medical staff who attended to the care and treatment of the Plaintiff, as previously alleged, were employees, servants, actual/implied/ apparent agents and/or otherwise substantially under the control of the Defendant, SHAY.

5. That at all relevant times, the Defendant, SHAY, through its nursing staff, and/or Defendant, ALBERTA PAYNE, owed Plaintiff, KOREY SMITH, a Minor, a duty to exercise that degree of ability, diligence, skill, training and care in accordance with the applicable standards of professional practice as possessed and used by other Home Health Care and Nurse Agencies in the community, or in the alternative had a duty to exercise ordinary care in the care and supervision of the Plaintiff.

6. That at the time of the injuries to Plaintiff, he was only two (2) years of age and was too young to exercise care and caution for his own safety.

7. That at all relevant times, and prior thereto, the Defendant, SHAY, through its nursing staff, administrators, supervisors, managers, agents, employees, and/or ALBERTA PAYNE, knew, or should have known, that ALBERTA PAYNE would take Plaintiff, KOREY SMITH, a Minor, away from his residence and to her residence, at or near 16354 South Sawyer, Markham, Illinois, and, on the day of the occurrence, where a lawnmower was being operated.

11.   That as a direct and proximate result of one or more of the foregoing negligent

acts or omissions, the Plaintiff was:

(a)   Injured in the head, body and limbs, both externally and internally;

(b)   Injured and made sick, sore, lame and disordered, suffering extensive injuries to the body, internally and externally;

(c)   Injured and suffered bodily pain and injury and mental anguish and nervous shock from the day of the accident until now, and will continue to suffer in the future;

(d)   Injured and suffered disability and disfigurement resulting from said injuries;

(e)   Injured and suffered pain, physical as well as psychological, and will be reasonably certain to experience pain and suffering in the future as a result of said injuries;

(f)   Injured and has endured great nervous shock and will be reasonably certain to experience nervous and psychological effects in the future, all as a result of said injuries;

WHEREFORE, Plaintiff, KOREY SMITH, a Minor, by his Mother and next friend,

NICOLE CONNER, prays for judgment against the Defendant, SHAY HEALTH CARE

SERVICES, INC., an Illinois Corporation, in an amount in excess of FIFTY THOUSAND

($50,000.00) DOLLARS, plus costs

## COUNT VII

Now comes the Plaintiff, KOREY SMITH, a Minor, by his Mother and next friend,

NICOLE CONNER, by and through his attorneys, KARP AND ELLIS, and complaining of the

Defendant, SHAY HEALTH CARE SERVICES, INC., an Illinois Corporation, states as follows:

1 - 7.  Plaintiff adopts and realleges Paragraphs 1 through 7 of Count VI as Paragraphs 1

through 7 of Count VII.

8. Defendant, disregarding its duties as a home health care provider and nurse agency, wilfully, wantonly, and with reckless disregard for the safety of Plaintiff allowed the minor Plaintiff, KOREY SMITH, to be taken away from his home and to the home of ALBERTA PAYNE, and to be in the vicinity of a running lawnmower.

9. On or about March 27, 2003, Plaintiff was in the vicinity of the running lawnmower with its blade engaged, and was struck by the blade. As a direct result of the wilful, wanton, and reckless acts or omissions of the Defendant, Plaintiff's foot was cut off by the lawnmower blade and was severely and permanently injured and disabled in mind and body, and suffered bodily pain and mental anguish, and will continue to suffer in the future. Plaintiff has an amputated foot as a result of the incident.

10. At the time and place above stated, Defendant, with conscious indifference to surrounding circumstances and conditions and conscious that their conduct would naturally and probably result in injury to Plaintiff, wilfully and wantonly, and with a reckless disregard for the safety of Plaintiff, was guilty of one or more of the following wrongful acts or omissions:

(a) Wilfully and wantonly failed to provide proper nursing care and supervision in accordance with applicable standards of professional practice;

(b) Wilfully and wantonly allowed Plaintiff to be transported away from his residence;

(c) Wilfully and wantonly supervised and/or managed the care provided to the Plaintiff;

(d) Wilfully and wantonly failed to provide proper care and supervision for the minor Plaintiff;

(e) Wilfully and wantonly allowed a lawnmower to be operated in the close proximity of the minor Plaintiff;

(f) Wilfully and wantonly failed to supervise the operation and control of the lawnmower on the premises;

(g)     Wilfully and wantonly failed to warn Plaintiff of the operation and danger of the lawnmower on the premises;

(h)     Wilfully and wantonly acted in a manner inconsistent with the safety and welfare of the Plaintiff;

(i)     Was otherwise careless and reckless.

11.     That as a direct and proximate result of one or more of the foregoing wilful, wanton and reckless acts or omissions, the Plaintiff was:

(a)     Injured in the head, body and limbs, both externally and internally;

(b)     Injured and made sick, sore, lame and disordered, suffering extensive injuries to the body, internally and externally;

(c)     Injured and suffered bodily pain and injury and mental anguish and nervous shock from the day of the accident until now, and will continue to suffer in the future;

(d)     Injured and suffered disability and disfigurement resulting from said injuries;

(e)     Injured and suffered pain, physical as well as psychological, and will be reasonably certain to experience pain and suffering in the future as a result of said injuries;

(f)     Injured and has endured great nervous shock and will be reasonably certain to experience nervous and psychological effects in the future, all as a result of said injuries.

WHEREFORE, Plaintiff, KOREY SMITH, a Minor, by his Mother and next friend, NICOLE CONNER, prays for judgment against the Defendant, SHAY HEALTH CARE SERVICES, INC., an Illinois Corporation, in an amount in excess of FIFTY THOUSAND ($50,000.00) DOLLARS, plus costs

## COUNT VIII

Now comes the Plaintiff, NICOLE CONNER, by and through her attorneys, KARP AND ELLIS, and complaining of the Defendant, ALBERTA PAYNE, states as follows:

1 - 14. Plaintiff adopts and realleges Paragraphs 1 through 14 of Count I as Paragraphs 1 through 14 of this Count II.

15. That the Plaintiff, NICOLE CONNER, mother of the Plaintiff, KOREY SMITH, brings this cause to prosecute an action for family expenses, pursuant to the Family Expense Act (750 ILCS 65/15).

16. That as a direct and proximate result of one or more of the aforesaid wrongful acts and/or omissions, of the Defendants, ALBERTA PAYNE, McELDRIDGE ASKEW, Individually and as Agent of ALBERTA PAYNE, SHAY HEALTH CARE SERVICES, INC., an Illinois Corporation, and UNKNOWN AGENTS AND EMPLOYEES, the Plaintiff, NICOLE CONNER, did then and there become obligated for various sums of money for hospital and medical services and caretaking expenses of the Plaintiff, KOREY SMITH, pursuant to said Family Expense Act.

WHEREFORE, Plaintiff, NICOLE CONNER, prays for judgment against the Defendants, ALBERTA PAYNE, McELDRIDGE ASKEW, Individually and as Agent of ALBERTA PAYNE, SHAY HEALTH CARE SERVICES, INC., an Illinois Corporation, and UNKNOWN AGENTS AND EMPLOYEES, and each of them, for the hospital and medical services, and other such costs of the Plaintiff, KOREY SMITH, and for such other and further relief as the Court deems just.

Attorneys for Plaintiffs

KARP AND ELLIS - #30034
Attorneys for Plaintiffs
77 W. Washington Street, Suite 1020
Chicago, IL 60602
(312) 726-9382

# PLAINTIFF'S EXHIBIT D

# MECKLER BULGER & TILSON LLP

123 North Wacker Drive, Suite 1800
Chicago, Illinois 60606

Tel: 312-474-7900 • Fax: 312-474-7898
www.mbtlaw.com

Michael M. Marick
312-474-7888
michael.marick@mbtlaw.com

February 25, 2008

**Via E-Mail and U.S. Mail**

Mr. William P. Pistorius
Clausen Miller P.C.
10 South LaSalle Street, 16th Floor
Chicago, Illinois 60603

     **Re:   Smith v. Shay Health Care, et al.**

Dear Bill:

     This letter will confirm the agreement reached between National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and Swiss Re / Westport Insurance (hereinafter "Westport") with respect to post-settlement arbitration. On October 31, 2007, the parties negotiated a dismissal pursuant to settlement of the Smith v. Shay case, 03 L 14237, pending before Judge Elrod. As part of the settlement, Westport agreed to "drop down" and pay $200,000 toward the underlying settlement on behalf of Alberta Payne ("Payne"), while reserving the right to seek reimbursement of that amount from National Union through an arbitration. The $200,000 has now been funded by Westport, subject to the reservation of its rights against National Union, to be resolved through the arbitration. National Union and Westport agree to participate in an arbitration, subject to the following terms:

1.    The arbitration will be binding.

2.    The arbitration will proceed in Chicago, Illinois before a panel of three arbitrators, who will be selected in a manner consistent with the AAA Commercial Arbitration Rules and Procedures ("the AAA Rules"). Each party (i.e., National Union and Westport) will select an arbitrator, and, in accordance with the AAA Rules, the third arbitrator will be selected by the two initially selected arbitrators. The parties agree to make their initial arbitrator selections by March 7, 2008.

3.    The panel will decide whether Payne was an insured at the time of the underlying incident on March 27, 2003, and whether her actions at that time fell within the scope of the insuring agreement of the National Union policy at issue.

4.    If the panel decides the above issues in the affirmative (i.e., that Payne was an insured and her conduct was within the scope of the National Union insuring





PLAINTIFF'S
EXHIBIT
D

**MECKLER BULGER & TILSON LLP**

Mr. William P. Pistorius
February 25, 2008
Page 2

agreement), then National Union shall reimburse Westport for the $200,000.00 it paid toward settlement on Payne's behalf. If the panel finds that Payne was not an insured or was not acting within the scope of the National Union insuring agreement at the time of the underlying incident, then this matter is concluded with neither party owing anything to the other.

5. The arbitration will proceed as follows: Each party will have the right to submit a written brief and evidentiary exhibits to the arbitration panel in advance of the arbitration. Thereafter, each party will have the right to make an opening statement, present evidence, and to make an argument to the panel. Agreed time periods, yet to be decided, will be imposed upon the open statement and argument, and page limits will be agreed upon for the briefing. The evidence will be limited to the evidence which was produced and/or generated during formal discovery of the Smith vs. Payne case and/or the National Union v. Payne case (06 CH 581). There will be no additional discovery permitted in preparation for the arbitration. No live testimony will be permitted at the arbitration.

6. Each party will be responsible for its own costs. The parties will equally split the cost owed to the panel.

Please sign below to confirm National Union's agreement to these terms.

Very truly yours,

Michael M. Marick
As Attorney for Westport Insurance Company

MMM/tr

William P. Pistorius
As Attorney for National Union
Fire Insurance Company of Pittsburgh, PA
M:\12462\corres\Pistorius002mmm draft.doc

# PLAINTIFF'S EXHIBIT E

## CHRISTOPHER M. KAHLER

| | |
|---|---|
| From: | MICHELLE R. VALENCIC |
| Sent: | Thursday, September 11, 2008 4:18 PM |
| To: | 'Marick, Mike'; bobboharic@hotmail.com; BCrowe@Shefskylaw.com; gdivito@tdrlawfirm.com |
| Cc: | Martin, Erin; WILLIAM P. PISTORIUS; CHRISTOPHER M. KAHLER |
| Subject: | Westport adv. National Union Arbitration |
| Importance: | High |

Dear Judges Boharic, Crowe and DiVito and Mr. Marick,

We received Westport's Submission of Supplemental Materials this afternoon, in anticipation of tomorrow's arbitration of this matter.

For the same reasons discussed in National Union's response brief, this most recent submission by Westport is a further blatant violation of the arbitration agreement between the parties and clearly operates to prejudice National Union. The arbitration agreement limited the admissible evidence in this case to "evidence which was produced and/or generated during formal discovery" in the underlying case or the prior coverage action. Westport continues to blatantly breach the arbitration agreement by submitting documents which were not, by any stretch, "evidence which was produced and/or generated during formal discovery." Today's submission by Westport consists of attorney-client privileged communications, attorney work product, documents protected from disclosure by joint defense and/or joint interest privileges and/or other confidential materials. As such, the submission not only constitutes a material violation of the arbitration agreement, it may also constitute a violation of applicable privileges and/or ethical rules by Westport and/or its counsel and its clearly operates to prejudice National Union on the eve of this arbitration.

In light of this development, National Union views Westport's conduct as an irreparable breach of the arbitration agreement, rendering the agreement null and void and releasing National Union from any obligation to comply with its terms. In light of this, the arbitration panel does not have any authority or jurisdiction to proceed with the arbitration tomorrow or to render any decision as to this matter.

National Union will not proceed with the arbitration hearing tomorrow.

Also, National Union reserves all rights it may have in law, equity or otherwise to pursue Westport for breach of the arbitration agreement and/or to recover any and all fees, costs or expenses incurred by National Union as a result of Westport's breach. To the extent the arbitrators incur fees or expenses associated with Westport's breach, National Union submits that they should be billed entirely to Westport and/or its counsel.

Respectfully submitted,

*Michelle R. Valencic*
CLAUSEN MILLER, P.C.
10 S. LaSalle St.
Chicago, IL 60603-1098
ph: (312)855-1010
fx: (312)606-7777
mvalencic@clausen.com

1


PLAINTIFF'S EXHIBIT
E

# PLAINTIFF'S EXHIBIT F

**In the Matter of the Arbitration of**

Westport Ins. Co., Claimant      )
                                 )
and                              )
                                 )    Honorable Brian L. Crowe
                                 )    Honorable Robert V. Boharic
National Union Fire Ins. Co., Respondent.   )    Honorable Gino L. DiVito

## ORDER

The Panel of Arbitrators in this matter has convened and discussed the issues arising from the submissions made by Westport on September 11, 2008 and the objections to those submissions made by National Union.

The Panel finds that it has jurisdiction to proceed with the arbitration proceedings.

The Panel directs both parties to file briefs related to the issues raised by the submissions made by Westport on September 11. Those briefs will address:

1)      the propriety of Westport's submissions;

2)      the admissibility of Westport's submissions; and

3)      if the submissions are improper, what is the appropriate remedy or remedies that should be applied by the Panel.

The parties will file simultaneous briefs with the Panel on or before September 30, 2008.

Dated 9/12/08

_____
Honorable Brian L. Crowe

_____
Honorable Robert V. Boharic

_____
Honorable Gino L. DiVito

PLAINTIFF'S
EXHIBIT
F

# PLAINTIFF'S EXHIBIT G

## WILLIAM P. PISTORIUS

**From:** Marick, Mike [mike.marick@mbtlaw.com]

**Sent:** Wednesday, September 17, 2008 2:04 PM

**To:** bobboharic@hotmail.com; BCrowe@Shefskylaw.com; gdivito@tdrlawfirm.com; MICHELLE R. VALENCIC; WILLIAM P. PISTORIUS

**Cc:** Martin, Erin

**Subject:** RE: Westport adv. National Union

One more—sorry again. "Payne" should instead have been "Shay" in the third paragraph. The correction is made to the email which follows.


**From:** Marick, Mike
**Sent:** Wednesday, September 17, 2008 11:27 AM
**To:** 'bobboharic@hotmail.com'; 'BCrowe@Shefskylaw.com'; 'gdivito@tdrlawfirm.com'; 'mvalencic@clausen.com'; 'wpistorius@clausen.com'
**Cc:** Martin, Erin
**Subject:** Westport adv. National Union

My apologies to all. The following email corrects the transposition of "J&B" and "National Union" in the fourth paragraph of my email earlier this morning. I apologize for any inconvenience.

**From:** Marick, Mike
**Sent:** Wednesday, September 17, 2008 9:09 AM
**To:** 'bobboharic@hotmail.com'; 'BCrowe@Shefskylaw.com'; 'gdivito@tdrlawfirm.com'; 'mvalencic@clausen.com'; 'wpistorius@clausen.com'
**Cc:** Martin, Erin
**Subject:** Westport adv. National Union

Dear Judges Boharic, Crowe and DiVito and Ms. Valencic and Mr. Pistorius:

I am writing on behalf of Westport to follow up on the rather unusual events of last week, as well as the Panel's Order on September 12, 2008: (1) finding it has jurisdiction to proceed with the arbitration; and (2) requesting simultaneous submissions by September 30th concerning the Johnson & Bell ("J&B") letters submitted to this Panel by Westport on September 11th. This email will provide you with Westport's positions and its proposal for proceeding forward expeditiously, without further delay or unnecessary cost, to resolve the arbitration on the merits.

Westport appeared at the time and place scheduled for the arbitration and was fully prepared to proceed on the merits. AIG/National Union refused to appear. National Union's proper course of action for objecting to the Panel's consideration of the J&B reports as evidence in this matter simply was to assert its objection to allow the Panel to then determine the admissibility, relevance and materiality of the evidence offered by Westport. See, e.g., American Arbitration Association, Commercial Arbitration Rules, R-31(b) ("The arbitrator shall determine the admissibility, relevance and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant"). Further, Westport's objection to the admissibility of the J&B reports had and has no bearing on the validity of the parties' agreement to arbitrate. The Uniform Arbitration Act, adopted in Illinois, 710 ILCS 5/1,


PLAINTIFF'S
EXHIBIT
G

provides:

> Sec. 1. Validity of arbitration agreement. A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract . . .

Westport's request that this Panel consider certain evidence does not invalidate the agreement to arbitrate, and National Union has cited no case in support of this truly novel argument. Thus, the Panel appropriately entered its order on September 12th that it does, in fact, have jurisdiction over the parties' dispute and their agreement to arbitrate.

Westport's position concerning the J&B reports is straightforward – they do in fact constitute "evidence which was produced and/or generated during formal discovery" of the Smith action. National Union hired J&B as counsel to defend Shay and, thus, under Illinois law, there was an attorney-client relationship between National Union and J&B. See, e.g., Nandorf, Inc. v. CNA, Inc., 134 Ill. App. 3d 134, 479 N.E.2d 988 (1st Dist. 1985). Significantly, National Union hired *separate* counsel, the Cassiday Schade firm, to represent Payne, presumably because it recognized a conflict given its coverage positions. National Union's adversity to Payne was a matter of public record since at least January 2006, when it sued her seeking a declaration that it did not afford coverage. See National Union v. Payne, Case No. 06 CH 585 (Complaint attached to Westport arbitration materials as Exhibit C).

Westport, by contrast, did not deny coverage to Payne, as it extended coverage to both Shay and Payne. As such, National Union and Westport long have been adverse to one another (since National Union's position would render Westport the only professional liability insurer of Payne). National Union and its agent, J&B, were well aware that the carriers' interests conflicted. By mid-2007, when settlement discussions accelerated and National Union took the position that it would not participate in any settlement on behalf of Payne, the carriers were openly adverse to one another. Accordingly, *most particularly as respects Payne*, plainly there was never any common interest, joint defense, nor was there ever any attorney-client relationship between J&B and Westport, contrary to the positions taken last week by National Union.

As such, when the J&B letters of July 19, 2007 and August 31, 2007 were transmitted to National Union, with a carbon copy to Westport (through its representative, Robert Abney, whose name is reflected on the face of those documents), there were no protections or privileges associated with those reports (or they were waived upon sending them to Mr. Abney, given National Union's adversity to Westport). Matters reflected in those reports, made by J&B in its capacity as an agent of National Union, are admissions of an agent (J&B) admissible against its principal (National Union). See generally Cleary & Graham's Handbook of Illinois Evidence, § 802.9 (8th ed. 2004). The J&B reports, which Westport has asked this Panel to consider, relate to matters within the scope of J&B's authority (the testimony of Korey's grandmother, Ms. Hurt, and Shay's nursing supervisor, Ms. Whitemiller, and the credibility of each, including how a jury would view their respective testimony) which National Union places squarely in issue in this arbitration. (See, e.g., National Union Response at 16-17.) The reports plainly are "evidence" (i.e., admissions of National Union's agent, J&B) "produced and/or generated during formal discovery of the Smith action" (i.e., they concern discovery and were created and

disseminated while discovery of the <u>Smith</u> action was ongoing). Thus, the reports are properly before this Panel. However, ultimately it is the role of this Panel to decide the admissibility of these reports, and any remedy in the event the Panel disagrees is the exclusion of the reports from evidence.

Notwithstanding the foregoing, Westport is prepared to offer the following – in the event National Union and the Panel agree to address the merits of the parties' disputes on the written submissions received to date (<u>i.e.</u> there will be no further argument or hearing and thus no further cost to Westport or additional delay in the disposition of the arbitration on the merits), then (1) Westport will withdraw as evidence the J&B reports (thus obviating the need for simultaneous submissions on September 30th); and (2) Westport will waive any claim against National Union for its fees and expenses associated with another in-person appearance before the Panel (since it was prepared to proceed on September 12 but could not due to National Union's failure to appear).

Westport looks forward to the response of the Panel and National Union to its proposal. Thank you for your consideration.

Mike Marick

Note: The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.

Thank you. Meckler Bulger Tilson Marick & Pearson LLP

9/23/2008