UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 CV 5543 |
| v. | ) ) | Judge John W. Darrah |
| WESTPORT INSURANCE CORPORATION, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case concerns an insurance coverage dispute between Plaintiff National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") and Defendant Westport Insurance Corporation ("Westport"). First Union filed the action in state court, seeking declaratory and other relief regarding the parties' obligations under an arbitration agreement. Westport removed the action to federal court; Westport moves for summary judgment and to compel arbitration or, in the alternative, to stay this action pending arbitration. (Docket No. 7.) National Union opposes the motion and has filed a cross-motion for summary judgment on all counts of its complaint for declaratory relief ("Complaint"). (Docket No. 18.) For the reasons stated below, Westport's motion is granted; National Union's motion is denied.

1

## LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Gillis v. Litscher*, 468 F.3d 488, 492 (7th Cir. 2006). The moving party has the initial burden to show that the evidence is insufficient to establish a material element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, the non-moving party cannot rest on conclusory pleadings but must "set forth specific facts in affidavits or otherwise to show that there is a genuine issue of material fact that must be decided at trial." *Colan v. Cutler-Hammer, Inc.*, 812 F.2d 357, 361 (7th Cir. 1987). That is, the non-moving party must "present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). If the evidence supporting the non-moving party's claim is insufficient for a reasonable jury to return a verdict in its favor, the court will grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## BACKGROUND

For purposes of the pending motions, the following relevant background facts derived from the parties' filings pursuant to Local Rule 56.1 are not in dispute.[1]

National Union issued a Health Care Agency Professional Liability Policy, No. HHA-6915000(03), to Shay Health Care Services, Inc. and Shay Nursing, Inc. (collectively, "Shay") for the policy period from November 2, 2002 through November 2, 2003 (the "National Union Policy"). The National Union Policy included policy limits of $1 million for each wrongful act, subject to a $3 million aggregate limit and a $1,000.00 deductible for each wrongful act. (National Union SOF, ¶ 5.)

Westport issued a Commercial Excess Liability and Umbrella Liability Policy, No. SBTOO3153, to Shay for the policy period from November 2, 2002 through November 2, 2003 (the "Westport Policy"). The Westport Policy included limits of $3 million for each occurrence. (National Union SOF, ¶ 6.)

On or about November 10, 2003, a lawsuit captioned *Korey Smith, et al. v. Alberta Payne and Shay Health Care Services, Inc., et al.*, Case No. 03-014237, was filed in the Circuit Court of Cook County, Illinois ("*Smith*"). (National Union SOF, ¶ 7.) *Smith* was brought by minor plaintiff Korey Smith and his mother against Alberta Payne, Payne's employer, Shay, and others for injuries Smith sustained while at Payne's home.

---

[1]Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the non-moving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to respond to a Rule 56.1 statement results in the court's admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

(National Union SOF, ¶ 8.)

National Union provided a defense to Payne in *Smith*. National Union also filed a declaratory judgment action in the Chancery Division of the Circuit Court of Cook County, Illinois, seeking a declaration of its rights and obligations to Payne under the National Union Policy (National Union's "declaratory action"). (National Union SOF, ¶ 9.) National Union took the position that it owed no duty to defend or indemnify Payne in connection with *Smith* because, *inter alia*, Payne was not acting solely in her capacity as an employee of Shay, was acting outside the scope of her employment and/or was not engaged in the conduct of the business of the health care agency at the time of Smith's injury. (National Union SOF, ¶ 10.) The *Smith* court found that National Union owed a duty to defend Payne; however, the court declined to reach the issue of whether National Union owed a duty to indemnify Payne in advance of any judgment or settlement in *Smith*. (National Union SOF, ¶ 11.)

Prior to the scheduled trial date, the parties reached settlement in principle. A written settlement agreement was executed on February 1, 2008. National Union, Westport and others contributed toward the settlement. As a result of the settlement, *Smith* and National Union's declaratory action were both dismissed with prejudice. (National Union SOF, ¶¶ 12-13.)

In connection with the underlying settlement, National Union and Westport agreed to arbitrate two limited issues associated with insurance coverage for Payne under the National Union Policy. (National Union SOF, ¶ 14.)

4

By letter dated February 25, 2008, National Union and Westport executed an arbitration agreement. The arbitration agreement provides:

> 1. The arbitration will be binding.
>
> 2. The arbitration will proceed in Chicago, Illinois before a panel of three arbitrators, who will be selected in a manner consistent with the AAA Commercial Arbitration Rules and Procedures ("the AAA Rules"). Each party (*i.e.*, National Union and Westport) will select an arbitrator, and, in accordance with the AAA Rules, the third arbitrator will be selected by the two initially selected arbitrators. The parties agree to make their initial arbitrator selections by March 7, 2008.
>
> 3. The panel will decide whether Payne was an insured at the time of the underlying incident on March 27, 2003, and whether her actions at the time fell within the scope of the insuring agreement of the National Union policy at issue.
>
> 4. If the panel decides the above issues in the affirmative (*i.e.*, that Payne was an insured and that her conduct was within the scope of the National Union insuring agreement), then National Union shall reimburse Westport for the $200,000.00 it paid toward settlement on Payne's behalf. If the panel finds that Payne was not an insured or was not acting within the scope of the National Union insuring agreement at the time of the underlying incident, then this matter is concluded with neither party owing anything to the other.
>
> 5. The arbitration will proceed as follows: Each party will have the right to submit a written brief and evidentiary exhibits to the arbitration panel in advance of the arbitration. Thereafter, each party will have the right to make an opening statement, present evidence, and to make an argument to the panel. Agreed time periods, yet to be decided, will be imposed during the opening statement and argument, and page limits will be agreed upon for the briefing. The evidence will be limited to the evidence which was produced and/or generated during formal discovery of the *Smith v. Payne* case and/or *National Union v. Payne* case (06 CH 581). There will be no additional discovery permitted in preparation for the arbitration. No live testimony will be permitted in the arbitration.
>
> 6. Each party will be responsible for its own costs. The parties will equally split the cost owed to the panel.

(National Union SOF, ¶ 16.)

The parties thereafter proceeded with the process of arbitration. A three-person arbitration panel (consisting of three former judges) was selected; and the parties each submitted opening and responsive arbitration briefs, along with various exhibits. (National Union SOF, ¶ 18.) In its opening and responsive briefs, Westport asserted a claim for interest; Westport also cited admissions made by National Union contained in the *Smith* settlement agreement. (National Union SOF, ¶¶ 20, 21.)

National Union objected to Westport's submission and use of information in the *Smith* settlement agreement and took the position in its briefs in the arbitration proceeding that Westport's conduct in submitting the information and seeking interest fundamentally breached the arbitration agreement. (National Union SOF, ¶ 23.)

A hearing was scheduled for September 12, 2008, before the arbitration panel. (National Union SOF, ¶ 23.)

On September 11, 2008, Westport submitted "Supplemental Materials" to the arbitration panel. These materials consisted of two letters prepared by National Union's defense counsel in *Smith*. (National Union SOF, ¶ 25; Westport SOF, ¶ 15.)

Later that same day, National Union advised the arbitration panel that Westport's prior conduct (of seeking interest and citing admissions contained in the *Smith* settlement agreement) and its submissions on September 11, 2008 (which National Union maintains are privileged) constituted a material breach of the arbitration agreement, rendering the agreement null and void. National Union asserted that the panel did not have authority or jurisdiction to proceed with the arbitration and stated that it would not proceed with the arbitration hearing. (Complt., ¶ 27.)

In light of National Union's expressed intent not to appear, the panel asked for Westport's position. (Westport SOF, ¶ 17.) Westport indicated that it would appear and be prepared to proceed at the hearing. (Westport SOF, ¶ 18.) The panel, through Judge DiVito, advised shortly thereafter that it would convene at the scheduled time and place and would consider initially whether to proceed with the arbitration. (Westport SOF, ¶ 19.) The arbitration panel convened on September 12, 2008, and issued the following order:

> The Panel of Arbitrators in this matter has convened and discussed the issues arising from the submissions made by Westport on September 11, 2008 and the objections to those submissions made by National Union.
>
> The Panel finds that it has jurisdiction to proceed with the arbitration proceedings.
>
> The Panel directs both parties to file briefs related to the issues raised by the submissions made by Westport on September 11. Those briefs will address:
>
> 1) the propriety of Westport's submissions;
>
> 2) the admissibility of Westport's submissions; and
>
> 3) if the submissions are improper, what is the appropriate remedy or remedies that should be applied by the Panel.
>
> The parties will file simultaneous briefs with the Panel on or before September 30, 2008.

(Westport SOF, ¶ 21.)

Westport submitted correspondence to the panel, arguing the merits of its submissions and suggesting a proposed remedy. (National Union SOF, ¶ 32.) National Union sent an e-mail, stating its position that the panel was without jurisdiction.

7

(Westport SOF, ¶ 23.)

Thereafter, on September 25, 2008, National Union filed this action in state court, alleging six counts. Count I seeks a declaratory judgment that Westport breached the material terms of the arbitration agreement by submitting issues to the arbitration panel beyond the two limited issues that the parties agreed to arbitrate; submitting evidence beyond the scope of evidence that the parties agreed to utilize for purposes of the arbitration; and asserting a claim for an amount in excess of the amount the parties agreed to arbitrate. Count II seeks rescission of the arbitration agreement. Count III seeks a declaratory judgment that Westport's conduct breached the arbitration agreement and that the arbitration panel exceeded its authority in its September 12, 2008 Order that it had jurisdiction to proceed with the arbitration proceeding. Count IV seeks a permanent injunction enjoining the arbitration panel from proceeding. Count V seeks further declaratory relief regarding the arbitration agreement and jurisdiction of the panel. Count VI seeks damages from Westport for breach of contract.

National Union then requested a stay of the arbitration proceedings. (National Union SOF, ¶ 33.) The arbitration panel issued an order staying the arbitration "until the court rules on National Union's complaint." (National Union SOF, ¶ 34.)

## ANALYSIS

Westport moves for summary judgment or, in the alternative, for an order staying this action pending arbitration on the basis that the parties agreed that the American Arbitration Association's Commercial Arbitration Rules ("the AAA Rules") and the Illinois Uniform Arbitration Act apply to their underlying insurance coverage dispute, and that pursuant thereto, all the issues raised by National Union in this action are arbitrable.

Westport submits evidence which it contends shows that after the February 25, 2008 letter set forth above was sent, additional communications took place between the parties' lawyers indicating that the parties agreed for the arbitration to be conducted in accordance with the AAA Rules. (*See* Marik Aff, Exs. B-D; Second Marik Aff., Exs. I-J.)

Westport cites the following specific AAA Rules:

COMMERCIAL ARBITRATION RULES

R-1. Agreement of Parties

(a) The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules . . .
\*\*\*
(d) All other cases shall be administered in accordance with Sections R-1 through R-54 of these rules.
\*\*\*
R-7. Jurisdiction

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

9

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

\*\*\*

R-31. Evidence

(a) The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default or has waived the right to be present.

(b) the arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.

(c) The arbitrator shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

\*\*\*

R-37. Waiver of Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have wiaved the right to object.

\*\*\*

R-43. Scope of Award

(a) The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

\*\*\*

>   (d) The award of the arbitrator(s) may include:
>     (i) interest at such rate and from such date as the arbitrator(s) may deem appropriate . . .

(Aff. of Michael Marick, Ex. D.)

Westport contends these rules on their face demonstrate that all of the issues raised in National Union's Complaint are arbitrable. Specifically, AAA Rule R-7(a) gives the arbitrators the power to rule on their own jurisdiction, "including any objections with respect to the existence, scope or validity of the arbitration agreement"; Rule R-7(b) gives the arbitrators "the power to determine the existence or validity of a contract of which an arbitration clause forms a part"; R-31(b) permits the arbitrators to "determine the admissibility, relevance, and materiality of the evidence"; and Rule 43(d)(i) allows the panel to award interest as the panel "may deem appropriate." According to Westport, these provisions show that the arbitration panel had the power to determine its own jurisdiction and whether the arbitration agreement was valid.

Westport also disputes that its conduct constitutes a breach of the arbitration agreement, even if the merits of this issue could be resolved in court. Westport contends the evidence it submitted to the arbitration panel fits "squarely within the contemplation of the parties' agreement, and the panel was free to accept or reject Westport's evidence and arguments in its discretion." (Westport Rep. at 7; *see also* AAA Rule 31.) Further, National Union waived any objections to Westport's arguments and evidence under AAA Rule R-37 by failing to object to them in writing until after the arbitration proceedings were well under way. Finally, Westport's submission of the *Smith* settlement agreement did not breach the arbitration agreement, as National Union expressly consented in

11

writing to the disclosure of the settlement agreement in the arbitration. (Westport Rep. at 8, citing Marick Aff, Ex. K.)[2]

In sum, Westport contends that the parties agreed the issues raised in this case are to be resolved in the arbitration and that its conduct did not materially breach the arbitration agreement. Westport seeks an order directing National Union to proceed with the pending arbitration pursuant to the Illinois Uniform Arbitration Act ("IUAA"), 710 ILCS 5/2(a). The IUAA provides that "[a]ny action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made. . . ." 710 ILCS 5/2(d).

In its brief opposing Westport's motion and in support of its cross-motion, National Union cites authority generally supporting the proposition that parties may be compelled to submit to arbitration only those issues which they agreed to arbitrate. (National Union Mem. at 3-4.) It cites *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995), for the general proposition that where the parties did not agree to submit the question of arbitrability to arbitration in the first instance, the court, as opposed to the arbitrator, is to decide that issue. It then maintains that the case is not arbitrable because Westport's conduct constitutes a fundamental breach of the arbitration agreement, rendering the agreement null and void.

National Union contends this case may proceed in court under these principles. While National Union acknowledges that the parties agreed to submit two specific

---

[2] In support of this assertion, Westport submits a copy of an e-mail message in which National Union's counsel states that "National Union has no objection to disclosing the underlying settlement agreement to the panel."

12

matters to arbitration (*i.e.*, "whether Payne was an insured at the time of the underlying incident on March 27, 2003, and whether her actions at the time fell within the scope of the insuring agreement of the National Union policy at issue"), National Union argues the parties did not agree for the panel to determine any and all disputes between them. Further, National Union argues that while the parties agreed that the AAA Rules would apply to "certain agreed-upon aspects of the case, namely the selection and neutrality of the arbitrators, the parties did not agree to arbitrate before the AAA under Rule R-1, and the parties never agreed to conduct each and every aspect of their arbitration according to the AAA." (National Union Mem. at 6.) National Union explains:

> For example, the parties did not authorize the AAA to administer the arbitration under Rule R-2 and they did not follow the initiation procedures set forth in Rule R-4. NU Facts ¶ 19. Neither party filed a demand, claim or counterclaim for arbitration, and they never filed anything with the AAA prior to or during the proceedings (*Id.*), as would have been required had the Rules applied generally. *See, e.g.*, R-4(a), R-5, R-6. While the Rules do contain explicit evidentiary provisions which admittedly allow a wide variety of evidence to be submitted, as well as live testimony, the parties did not agree to follow those rules. NU Facts ¶ 16. Instead, the parties expressly agreed to limit the permissible evidence to a scope far narrower than the AAA Rules, and they agreed that no live witnesses were allowed. *Id.* (Agreement ¶ 5.) WP Brief at 12.

National Union Mem. at 7.

National Union argues that the current dispute is not arbitrable because it raises issues the parties did not agree for the arbitrators to decide.

However, Westport has persuasively shown that the parties agreed for the arbitration to take place in accordance with the AAA Rules, subject to the specifically agreed modifications. This agreement of the parties was confirmed by a June 3, 2008 e-mail from National Union's counsel to the arbitrators, stating:

13

> Thank you for agreeing to serve as arbitrators in the captioned matter. As a reminder, our office represents National Union Fire Insurance Company of Pittsburgh PA, while Westport Insurance Company is represented by Mike Marick and Erin Martin of Meckler, Bulger & Tilson (both copied on this email). Mr. Marick previously circulated a copy of the arbitration agreement and the AAA rules which will apply.

(Second Marick Aff, Ex.I.)

Marick previously circulated complete copies of the AAA Rules, not just a rule pertaining to the selection of arbitrators. (*See* Marik Aff, Exs. B-D.) Under the AAA Rules set forth above, the arbitrators have the authority to determine the issues raised in National Union's Complaint.

Even *assuming* the parties did not agree for the arbitration to be conducted generally according to the AAA Rules, National Union's Complaint is based on allegations falling within the scope of the matters the parties agreed to arbitrate. As National Union concedes, the parties agreed for the arbitrators to decide the substantive issues stated in the arbitration agreement. It was specifically stated and contemplated by the parties in the arbitration agreement that the arbitrators would consider briefs and evidence, as set forth therein. There is no suggestion in the arbitration agreement that the arbitrators would not be able to determine whether evidentiary materials submitted by the parties were inadmissible under the agreement's terms.[3] National Union's objection to Westport's request for interest is premature and does not render the parties' agreement to submit the issues stated in the arbitration agreement to arbitration. The arbitration panel has not yet made an award of interest.

---

[3]Indeed, the parties' conduct of submitting briefs in the arbitration proceeding addressing the propriety and import of Westport's alleged wrongful conduct is further evidence that the parties agreed for the arbitrators to decide the issues.

14

In sum, the matters National Union alleges in this action fall within the scope of the parties' arbitration agreement. Therefore, the parties are hereby ordered to proceed with arbitration. *See* 710 ILCS 5/2 ("On application of a party showing an agreement [to arbitrate], and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party. . . . ").

## CONCLUSION

For the reasons stated above, Westport's motion for summary judgment is granted; National Union's cross-motion is denied. Pursuant to 710 ILCS 5/2, the parties are ordered to proceed with arbitration. This case is hereby stayed pending arbitration.

Date: February 25, 2009

JOHN W. DARRAH
United States District Court Judge